## LLOYD et al. v. JUNKIN.
### No. 11476.

Court of Civil Appeals of Texas. Dallas.
Sept. 29, 1934.

Rehearing Denied Nov. 3, 1934.

John Davis, of Dallas, for appellants.

McCormick, Bromberg, Leftwich & Carrington, of Dallas, for appellee.

BOND, Justice.

This suit was instituted in a district court of Dallas county by E. D. Junkin and T. P. Junkin against C. J. Lloyd, C. L. Lloyd, and the Nu-Enamel Paint Company a corporation, to recover damages for deceit and misrepresentations of fact, which induced the plaintiff, E. D. Junkin, to make a contract with the defendant Nu-Enamel Paint Company, to act for it as a distributing agent and put on a campaign in the eastern part of the state of Oklahoma to establish the Nu-Enamel products, causing him, to his detriment, to invest money, time, and labor in attempting to carry out his obligations in the enterprise.

The court submitted the case to a jury on 28 special issues, and the jury found, by special issue No. 25, that T. P. Junkin was entitled to nothing, because he had undertaken to assist his son, E. D. Junkin, in establishing the business in Eastern Oklahoma on a profitable basis. Thus the plaintiff, T. P. Junkin, by such finding is eliminated as a party litigant, in so far as this appeal is concerned.

In response to special issues Nos. 1, 6, and 11, the jury found:

Issue 1. That, in the negotiations leading to the execution of the contract in question, C. J. Lloyd represented to E. D. Junkin that the experience of Nu-Enamel Paint Company had demonstrated that sales at retail prices averaged at least two quarts per day per rack.

Issue 6. That, in the negotiations leading to the execution of the contract in question, C. J. Lloyd represented to E. D. Junkin that the experience of the Nu-Enamel Paint Company had demonstrated that, in a territory such as the eastern half of Oklahoma, its district agents realized a profit in excess of $300 per month on ten racks of the company's products.

Issue 11. That, in the negotiations leading to the execution of the contract in question, C. J. Lloyd represented to E. D. Junkin that, from the experience of the Nu-Enamel Paint Company, the merchandise, such as was being purchased by E. D. Junkin, was being resold at prices exceeding that which he was then paying, and yielding a net profit on resales.

Each of these special issues, 1, 6, and 11, were properly supported by other issues and findings, to the effect that such representations were false; that C. J. Lloyd knew them to be false; that, if E. D. Junkin had known they were false, he would not have entered into the contract; and that E. D. Junkin would not have made the expenditures in time and money if he had known they were false.

In answer to special issue No. 26, the jury found that the sum of $3,500 "will reasonably compensate E. D. Junkin for his loss sustained, by virtue of his efforts to establish the Nu-Enamel business in the Eastern part of Oklahoma."

The jury further found "that E. D. Junkin ratified the written contract with Nu-Enamel Paint Company and C. J. Lloyd, and elected to be bound by it, but did not waive his right to damages."

At the close of plaintiff's testimony, the defendants filed a motion for an instructed verdict in their favor. This motion was overruled. Then, on the findings of the jury, the defendants again filed and presented their motion for judgment, and, in the alternative, notwithstanding the verdict of the jury. This motion was also overruled. Thereupon judgment was entered by the court in favor of the plaintiff, E. D. Junkin, against C. J. Lloyd and the Nu-Enamel Paint Company, jointly and severally, for the sum of $3,500, with interest at 6 per cent., and costs of suit to the extent of two-thirds thereof, the plaintiffs to pay one-third of said cost and in favor of C. L. Lloyd. From this judgment appellants have duly perfected an appeal to this court. and have raised, by proper assignments, in essence, that the character and extent of the evidence does not support the judgment.

The following are the material facts:

The plaintiff, E. D. Junkin, testified, in effect, that prior to his entering into the contract with the Nu-Enamel Paint Company he went to the company's factory in Dallas, Tex., and there interviewed its manager, C. J. Lloyd, and, in this interview, Lloyd explained the proposition of handling the company's products, the plan of merchandising, the merits of the Nu-Enamel, and, to a certain extent, explained its ingredients. how it was compounded and manufactured. etc. Lloyd said it was an enamel for the use of amateur painters, generally in the painting of automobiles, that it could be spread on without brush marks, would not sag, and was a fine quality; that the Nu-Enamel name was patented, and the ingredients were of a secret formula, but not on record in the Patent Office. Lloyd explained the system of merchandising with devised racks, a new merchandise venture that they were just installing and beginning to use, and were then working out a plan "to make them go." The plan was fairly recent; it was an innovation, or a change in the company's plan theretofore employed, and. quoting from plaintiff's testimony, he said, "What I understood was that, while it was a new merchandising plan, he (C. J. Lloyd) had time to establish the fact that the racks would produce two quarts a day." The witness described the racks as being a small advertising device, about 4 feet tall, about 3 feet wide, about 18 inches or 2 feet deep at the bottom, about a foot deep at the top, and equipped with rollers, so as to move it from place to place. The racks would contain a certain segment of the enamel, made up in various size cans of variegated colors. The idea was expressed by Lloyd, as stated by the witness, that these racks were to be placed in drug stores, filling stations, and other business houses, and the distributor was to contact the dealer and sell him the idea of placing the filled racks in his store and use them for a certain length of time, that their experience with the racks had been so remarkable that there would be no difficulty in placing them at advantageous places, particularly when the racks and paint were taken on consignment basis. The idea was to keep the dealer sold on the products, so that the dealer would be able to talk intelligently to the public about it; that, quoting from the witness' testimony, "C. J. Lloyd represented that their experience was that these racks would average two quarts a day, some racks would sell less than that, and some more than that, but the average would run two quarts a day, which, without any investment, would yield to the distributor, when the products were sold, in the neighborhood of about $30 per rack a month, and, to the merchant handling the product, a 20 percent commission."

The plaintiff further testified that during the negotiations C. J. Lloyd delivered to him advertising pamphlets, panel sheets showing the racks filled with the Nu-Enamel products, depicting its salient features, its quality and superiority over other enamels, and insets showing how to use Nu-Enamel, and reciting the merchandising plan for sales and distribution, and the possibilities of great profits to the distributor and to the merchant who may be induced to handle the product. These display advertisements show a possibility of a 20 per cent. sale profit to the merchant for handling the Nu-Enamel on consignment, and, to the distributor, a 50 per cent. profit on discount off of list price. The list price of each rack is shown to be $240, which the distributor was allowed to purchase for $120, and to sell or place with the dealer so as to reap the above-represented profits.

The territory assigned to the plaintiff was the eastern portion of Oklahoma, which he testified that C. J. Lloyd represented was an open field, virgin territory, that he was very anxious to open it up, explaining to him the wonderful opportunities for selling the Nu-Enamel in that state, that no contracts for the state had theretofore been made, that they had been selling the products out of automobiles, moving from town to town, and

714

the public, in more or less way, were already familiar with the Nu-Enamel, but that he wanted to place some one to take over the entire state and develop it.

On these negotiations, the plaintiff on December 20, 1930, entered into a written contract with the Nu-Enamel Paint Company, acting through its manager, C. J. Lloyd, as a distributor for the eastern portion of Oklahoma of its products, with the assurance or option for a period of six months to contract, if his venture in the eastern half proved successful, for the entire state. On executing the contract, plaintiff purchased 15 racks and the regular rack assortments of paint, for which he paid to the defendants the sum of $1,515.

The plaintiff further testified that soon thereafter, as contracted, the paint and racks were delivered, that he went to Tulsa, Okl., in furtherance of his agency and to put on the campaign for the distribution of the products, made arrangements to interview the merchants for the placing of the distributing racks, and, in time, did place ten of such racks; that, in his efforts to make the racks produce the profits and establish defendant's products in the assigned territory, he expended, in money, time, and labor, the sum of $3,495; and that he only sold $140 worth of paint in the four months he operated the business, due to improper conditions for the sale of paint and the improper support he was receiving from the company.

Appellants contend that a requested peremptory instruction in favor of the defendants should have been given, for the reason that a general representation as to past sales of a product and the profit realized therefrom, in previously exploited territory, would be no basis for a representation as to what would accrue from similar exploitation of such a product in a territory, in which the complaining party was given to exploit; the product had never theretofore been sold, but was virgin territory, in respect to such product. The only issue tendered by the proposition is whether the representations and inducements put forth by defendants were simply trade talk about unascertainable matters, and therefore merely an opinion, or were representations of fact, the truth or untruth of which would materially affect the contemplated venture.

In this connection, it will be recalled that the state of Oklahoma was represented to be new or virgin territory, and that the defendants were just installing and beginning to use the racks, and were trying to work out a plan to make them go. It was an innovation,

or change in their plan of operation, and quoting from Junkin's testimony, that "What I understood was that, while it was a new merchandising plan, he (Lloyd) had had time to establish the fact that the racks would produce two quarts a day." A careful analysis of this testimony, supported by the advertising matter given to the plaintiff by the defendants, shows that the plaintiff knew the plan of merchandising submitted was new; that the sales talk of the defendant was to the effect that, if certain things were done and certain amount of sales made, at the prices fixed by the defendants, and which were stamped on the cans, that certain profits would be realized, certain sales should produce certain profits, or will show certain profits. Such results evidently are but the experience of the business world. drawing a conclusion from the experience in the handling of familiar products, and are mere expressions of opinion as to the result of a venture. Common experience is replete with instances where one person has made success in a business, where others have failed; and that a venture is successful in one locality where in others it is not.

█ In order to sustain an action based on false representations, the evidence must show that the alleged representations were representations of fact, and not merely expressions of opinion. Opinion cannot constitute fraud. 26 Corpus Juris, p. 1079; Barrett v. Featherstone, 89 Tex. 567, 35 S. W. 11, 36 S. W. 245; Jackson v. Stockbridge, 29 Tex. 394, 94 Am. Dec. 290; Wortman v. Young (Tex. Civ. App.) 221 S. W. 660; Oxweld Acetylene Co. v. Darden (Tex. Civ. App.) 194 S. W. 1131; Laybourne v. Bray (Tex. Civ. App.) 190 S. W. 1159; Landrum v. Thomas (Tex. Civ. App.) 149 S. W. 813; Horton v. Smith (Tex. Civ. App.) 145 S. W. 1088; Oneal v. Weisman, 39 Tex. Civ. App. 592, 88 S. W. 290; International, etc., R. Co. v. Shuford, 36 Tex. Civ. App. 251, 81 S. W. 1189; Hunter v. International Bldg., etc., Ass'n, 24 Tex. Civ. App. 453, 59 S. W. 596.

In Black on Rescission and Cancellation, art. 86, the author says: "In order to effect a sale, induce the making of a contract, or place a proposed investment in a favorable light, it is quite common to make representations as to future value, productiveness, efficiency, or economy, or as to expected earnings or profits. But since that which lies in the future cannot be a matter of certain knowledge, it is held that all such representations must be taken and understood as mere expressions of opinion, and therefore their nonfulfillment cannot be treated as fraud."

Applying this rule to the undisputed facts in this case, we are of the opinion that the plaintiff has failed to show actionable fraud. At most, the testimony reflects representations of defendant's experience gathered in the handling of their products, their plan of merchandising theretofore employed, and the new plan with racks, which the testimony shows they had just recently inaugurated, which would, if successfully operated, and the territory assigned be as favorable as that in which the defendants had had experience, accomplish the sale of two quarts of paint per day, and at prices fixed by the company, and would cause the plaintiff to realize the assured profits. These contingencies for success evidently form no basis for misrepresentation of facts, therefore we are of the opinion the court below erred in submitting the case to the jury, in disregarding its verdict, and failing to enter judgment non obstante in favor of the defendants

There are other propositions urged by appellants which we have considered, but, in view of the position we have taken, as stated above, the judgment of the lower court is reversed and here rendered in favor of appellants.

Reversed and rendered.