James and Betty ZAR,
Plaintiffs-Appellants,

v.

OMNI INDUSTRIES, INC.,
Defendant-Appellee.

No. 86–1176.

United States Court of Appeals,
Fifth Circuit.

April 1, 1987.

W. Randolph Elliott, Pullman & Schendle, Dallas, Tex., for plaintiffs-appellants.

John A. Price, Greg Sivinski, Winstead, McGuire Sechrest & Trimble, Dallas, Tex., for defendant-appellee.

Before VAN GRAAFEILAND,* HIGGINBOTHAM, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

In this diversity action, Plaintiffs-Appellants, James and Betty Zar ("the Zars") challenge the district court's directed verdict against them on their claims of misrepresentation and wrongful termination of their distributorship rights. We affirm.

## I. BACKGROUND

Appellee Omni Industries, Inc., now known as Travelhost Magazine, Inc. ("Travelhost"), publishes and produces a "travelers' magazine" containing information on local lodging, restaurants, entertainment, TV schedules, and similar information of interest to the traveler. Travelhost distributes the magazine through a system of local distributors, who are in charge of selling local and national advertisements in the magazine and distributing the magazine, free of charge, to area lodgings. The local distributor is contractually obligated to purchase a certain minimum number of magazines each week or month from Travelhost, and receives a percentage

---

* Circuit Judge of the Second Circuit, sitting by designation.

of the advertising revenue generated from his advertising sales and his local edition of the magazine.

In early 1977, the Zars became interested in purchasing the Travelhost distributorship for part of the state of Colorado from J. Elliot Knoll, who at that time held the distribution rights for the entire state. Negotiations culminated in a March 21, 1977 assignment to the Zars of Knoll's Distribution Agreement for the state of Colorado, excepting the Denver metropolitan area (the "Colorado Springs edition"). In September 1977, the Zars purchased Knoll's rights in the Denver metropolitan area as well (the "Denver edition"), thus giving them exclusive distribution rights for the state of Colorado.

In the course of their initial negotiations with Knoll, the Zars received "Travelhost Distributor Information" and "Travelhost Profit Projection" booklets, which contained various estimates of profits possible from a distributorship. After signing the March 21, 1977 assignment of Knoll's rights and paying $6,000 of the $22,500 purchase price, the Zars met with Travelhost executives, at which time they received additional materials containing the same profit projections. The Zars also claim that Travelhost executives represented that the Zars' share of national advertising revenue (i.e., those advertisements appearing in Travelhost magazines nationwide) would be enough to cover the costs of buying the magazines, and that only one Travelhost distributorship had failed in the past.

Unfortunately, the venture was not as successful as the Zars had hoped. Although they combined their editions to produce one magazine for the entire state, the Zars received less than $4,000 in national advertising revenue while paying over $100,000 for magazines. The Zars suffered a total net operating loss of approximately $8,000 for the first three years of operation, as opposed to the minimum annual profit of $45,000 they claim Travelhost represented they would make. Additionally, the Zars claim that there was a yearly turnover rate of 30% of Travelhost distributorships, as opposed to Travelhost's claim that only one distributor had failed.

In 1979, Mr. Knoll filed suit in Colorado state court to recover amounts owed from the sale of the Denver distributorship. In response, the Zars counterclaimed for fraudulent misrepresentation and breach of contract in the sale of the Denver edition, claiming that Knoll had misrepresented the number of advertisements and the amounts of revenue under contract in the Denver edition. In April 1980, the state court held against the Zars on all claims and granted judgment for Knoll in the amount prayed for.

At about this time, a dispute between the Zars and Travelhost arose over the minimum number of magazines the Zars were required to purchase under the Distribution Agreements. In May 1980, Travelhost informed the Zars that they were in default of their Distributorship Agreements because they had not picked up or paid for the last three issues of the magazine, and gave them ten days to correct the default. The Zars did not correct the default, and Travelhost terminated the Zars' distributorships on June 5, 1980.

The Zars filed suit against Travelhost in Colorado state court in November 1980, claiming wrongful termination of their distributorship, that Travelhost was responsible for Knoll's misrepresentations, and that Travelhost itself had made material misrepresentations. Travelhost thereafter removed the case to federal court based on diversity of citizenship. In February 1981, the federal district court of the District of Colorado granted Travelhost's Motion for a Change of Venue, and the case was transferred to the Northern District of Texas.

At trial, the district court granted Travelhost's motion for a directed verdict on the wrongful termination and agency claims at the close of the plaintiffs' case, and granted Travelhost's motion for directed verdict on the remaining misrepresentation count at the close of the defendant's case. The Zars now appeal.

## II. DIRECTED VERDICT

### A. Fraudulent Misrepresentation

The Zars allege that the profit projections contained in the Travelhost literature,

along with the oral representations of Travelhost executives on the amount of national advertising revenue and the number of distributorship failures, fraudulently induced them to purchase the Colorado Springs and Denver distributorships. The district court granted Travelhost's motion for directed verdict on these claims on the grounds that (1) the profit projections were not affirmative representations as to profitability, (2) there was no affirmative representation as to the amounts of national advertising revenue, and (3) there was no evidence of misrepresentations made as to the number of prior failures, but even if such misrepresentations had been made, they were not made with the intent to deceive or induce the Zars to enter into the contracts. Furthermore, the court held that any misrepresentations by Travelhost could not have induced the Zars to purchase the Colorado Springs edition because the Zars had already entered into a binding contract to purchase it, and any issue of misrepresentation concerning the purchase of the Denver edition was collaterally estopped by the Colorado judgment in favor of Knoll. We review the district court's directed verdict on the Zars' claims under the familiar standard set forth in *Boeing Co. v. Shipman:*

> On motions for Directed Verdict and Judgment Notwithstanding the Verdict the court should consider all the evidence—not just the evidence that supports the non-movers case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict, granting the motion is proper.

411 F.2d 365, 374 (5th Cir.1969) (en banc).

■ The district court's view of the evidence before him has been confirmed by our perusal of the record. Despite their protestations to the contrary at trial, the Zars had committed to buy the Colorado Springs distributorship from Knoll and had paid him $6,000 of the purchase price before they attended Travelhost's business training program in Dallas. Although the sales agreement required, as did Knoll's distributorship agreement with Travelhost, the prior approval of Travelhost for an effective assignment, the applicable clauses further require that such approval shall not be unreasonably withheld. In any event, the Zars' execution and down payment on the contract bound them to its performance except in the event that the assignment was not approved. See generally Restatement (Second) of Contracts § 230 (1981) (discussing the operation of conditions subsequent). Approval of the Zars as distributors was perfunctorily given at the outset of the Dallas training program. The Travelhost executives testified that the training program was designed only for actual distributors, not simply prospective purchasers. We therefore agree with the district court's conclusion that there could be no fraudulent inducement by Travelhost to enter a contract which had already been made by the Zars. See *Hazle v. McDonald,* 449 S.W.2d 343 (Tex.Civ.App.—Dallas 1969, no writ).

Alternatively, we also agree with the district court that the alleged statements of Travelhost could not constitute actionable misrepresentation as a matter of law. We examine each alleged misrepresentation in turn.

1. *Profit Projections.* The Travelhost profit projections purportedly relied on by the Zars nowhere guarantee or represent that a Travelhost distributor will make a certain level of profit or income. Rather, they show what income and expense levels can be expected based on several variables, such as magazine size or whether national ads are sold into 10 or 30 local magazines. Lest there be any misunderstanding, all such profit summaries and projections introduced in evidence contain the following italicized disclaimer: "The above are projected figures and in no way reflect a guarantee on the part of the company, nor do they act as a minimum sales requirement on the part of the Distributor." Mr. Zar is an experienced certified public accountant, and he and his wife and daughter

testified that they knew these projections were ballpark figures and not guarantees.

■ The generally accepted rule in Texas jurisprudence is that future predictions and opinions, especially those regarding the future profitability of a business, cannot form a basis for fraud as a matter of law. *Maness v. Reese,* 489 S.W.2d 660, 663 (Tex. Civ.App.—Beaumont 1972, writ ref'd n.r. e.); *National Newspaper Enterprises, Inc. v. Chitwood,* 68 S.W.2d 264, 267 (Tex.Civ. App.—Dallas 1934, writ dism'd). As stated in *Lloyd v. Junkin,* 75 S.W.2d 712 (Tex.Civ. App.—Dallas 1934, no writ):

> In order to effect a sale, induce the making of a contract, or place a proposed investment in a favorable light, it is quite common to make representations as to future value, productiveness, efficiency, or economy, or as to expected earnings or profits. But since that which lies in the future cannot be a matter of certain knowledge, it is held that all such representations must be taken and understood as mere expressions of opinion, and therefore their nonfulfillment cannot be treated as fraud.

*Id.* at 714.

■ Such is the case here. The profit projections estimated a distributor's potential advertising revenue and income, but because they projected and did not affirmatively promise, they were not fraudulent representations. The district court properly directed a verdict for Travelhost on this issue.

■ 2. *National Advertising Revenue.* The Zars next claim that, while in Dallas, they were informed that their share of the national advertising revenues, as indicated on the profit projections, would be enough to cover the cost of the magazines. Travelhost executives deny making any such representation. The Zars contend that the district court erred in directing a verdict on this issue.

We disagree. The record demonstrates that any comparison of the cost of the magazines with the Zars' share of national advertising revenue would have been based on and in reference to Travelhost's profit projections. We have concluded that nothing in those projections could serve as the basis of an action for fraud. The projections, in fact, estimate a range of potential national advertising sales revenue starting at zero. Moreover, Mr. Zar admitted at trial that he never requested, nor was he shown any actual national advertising sales figures, and that Travelhost executives had not expressly told him that his share of the national revenues would be enough to cover the costs of the magazines. Assuming, arguendo, that Travelhost personnel made a representation apart from the profit projections that the national advertising revenues would cover the costs of the magazines, such a statement would have been, like the profit projections, a future prediction or opinion of future condition. As the statements in this record form the basis for a claim of fraud under Texas law, the district court properly directed a verdict on this issue.

■ 3. *Number of Failures.* The Zars assert that during the Dallas meeting they inquired into the number of distributorships that had failed and were told that only one had. In fact, as Travelhost executives testified at trial, two or three and perhaps more distributorships had failed. The Zars assert that this statement is an actionable misrepresentation which should have been sent to the jury.

However, we are inclined to agree with the district court that even if such a misrepresentation was made, it could not have been made with the requisite intent to induce the Zars to do anything. At the time of the Dallas meeting, the Zars had not yet contemplated buying the Denver edition, hence the representation could not have been made with the intent to induce them to do so. Further, as noted above the Zars' contract with Knoll for the Colorado Springs edition was a fait accompli by that time, precluding any fraud recovery from Travelhost.[1]

---

1. As this disposes of this issue, we need not consider the Zars' contention that the district court improperly excluded evidence of a 30% rate of turnover in Travelhost distributors.

694

### B. Wrongful Termination

 The Zars also allege that the district court erred in directing a verdict against them on the issue of wrongful termination. The Zars contend that Travelhost's position that the Zars were obligated to purchase 8,000 magazines per week (3,000 of the Colorado Springs edition and 5,000 of the Denver edition) constituted anticipatory repudiation of the distributorship agreements, and/or that Travelhost's termination of the distributorships was not based on any breach of the distributorship agreements, but was done so Travelhost could rid itself of irritating distributors and appropriate the Colorado market for itself.

These arguments are devoid of merit. Under the assignment of the Colorado Springs edition, the Zars were obligated to purchase 3,000 magazines each week. The Denver Distributorship Agreement required a minimum purchase of 5,000 magazines each week. The Zars testified that they combined the Denver and Colorado Springs editions into one magazine because they felt that it was more economical to deal with 8,000 copies of one magazine rather than two magazines.

When the Zars asserted, in early 1980, that they were required to purchase only 3,000 magazines, Travelhost responded that they must either purchase the 8,000 minimum or supply documentation to support the entitlement to fewer copies. Despite the Zars' failure to comply with these alternatives, Travelhost made a number of other offers, such as to provide the Zars with magazines at no charge for one year, in the hope of avoiding trouble. The Zars rejected all overtures. It was not until May 1980, after three shipments of magazines had literally been left sitting on shipping docks, that Travelhost exercised its contractual right to terminate the Zars' distributorships.

Nothing in the record supports the Zars' claims of anticipatory repudiation or ulterior motives in connection with their termination: on the contrary, the record indicates that Travelhost made numerous efforts to keep the Zars as distributors and ended the association only after the Zars refused to deal with Travelhost at all. As Travelhost did not breach the distributorship agreement, there was no fact issue on wrongful termination requiring resolution by the jury.

The judgment of the district court is AFFIRMED.

---

Such evidence, even if probative of the falsity of the representation, would not have shown any intent to induce, and thus a directed verdict on this issue would have been necessary in any case.