NO. 07-05-0221-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

DECEMBER 13, 2007

_____

JANICE E. FRY and TIMOTHY J. FRY,

Appellants

v.

FARM & RANCH HEALTHCARE, INC. and
BOBBY GENE STEWART, JR. a/k/a B. J. STEWART,

Appellees

_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 90,846-E; HON. ABE LOPEZ, PRESIDING

_____

*Memorandum Opinion*

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellants, Janice E. Fry and Timothy J. Fry (collectively referred to as the Frys) appeal from a final judgment denying them relief against Farm & Ranch Healthcare, Inc. (Farm) and Bobby Gene Stewart, Jr. a/k/a B. J. Stewart. The final judgment arose from two partial summary judgments and a directed verdict entered by the trial court prior to

trial.[1]  The Frys contend that the trial court erred in granting the partial summary

judgments and directing a verdict on the issue of damages since evidence of damages

existed.  We reverse and remand the judgment in part and affirm in part.

*Background*

The Frys sold insurance products for Farm and allegedly were paid commissions

from their own sales and the sales of agents they recruited.  Eventually, the relationship

between the parties soured, and Farm purportedly stopped paying the Frys any

commissions.  This resulted in a  suit against Farm and Stewart for, among other things,

fraud and breach of contract.[2]  The latter claim was disposed of through summary

judgment, as was one of the fraud allegations.  Thereafter, and shortly before trial

began, Farm filed a motion in limine contending that any evidence of damages

pertaining to the remaining fraud claim should be excluded because the Frys failed to

disclose it in response to discovery requests.  The court heard and granted the motion.

At that point, Farm moved for the aforementioned directed verdict on the remaining

fraud claim because the Frys had no evidence of damages.  The trial court granted that

motion as well, severed the remaining causes from the suit, and entered a final

judgment.[3]

---

[1]The Frys do not question on appeal whether an oral motion for directed verdict prior to the beginning
of trial was an appropriate vehicle through which to dispose of the claim.

[2]The causes of action other than fraud and breached contract are not at issue here.  They were either
relinquished below or severed into another cause.

[3]In granting the directed verdict, we conclude that the trial court decided to exclude, via the motion
in limine, all evidence of damages.  If this was not so, then the Frys would have had the opportunity to present
such evidence to the jury.  So, because they did not, the trial court must have decided to exclude that
evidence when granting the limine motion.  *See Owens-Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551,
557 (Tex.App.–Houston [1st Dist.] 1996), *aff'd*, 972 S.W.2d 35 (1998) (noting that a motion in limine, if granted,

*Issue 1 - Breach of Contract*

Regarding the claim of breached contract, the Frys asserted that Farm breached its agreement with them when it began "removing agents and failing to pay commissions as outlined in the Farm and Ranch commission structure." So too did Farm's refusal to reimburse a $22,500 telephone expense also constitute and instance of breach, according to the Frys. Via its motion for summary judgment, Farm averred that there was no evidence to support its opponents' claims. This was so because 1) concerning the removal of agents, no evidence illustrated that Farm's action breached any promise it made or obligation it assumed or that the Frys suffered damage, 2) concerning the failure to reimburse for the phone expense, it made no promise nor entered any agreement to pay it, and 3) regarding the unpaid commissions, no evidence illustrated that Farm neglected to pay commissions due the Frys or that they suffered damages. According to the Frys, however, they presented evidence sufficient to raise a fact issue on each matter. We agree in part and disagree in part.

*Phone Expenses*

According to Janice, she and Farm orally agreed that she would be reimbursed for cell phone expenses which were in an amount of $22,500. This agreement purportedly arose when she, as a regional manager, was told that Farm required her to provide cell phones for her agents and that she would be reimbursed for the charges incurred. These circumstances, if believed, constituted some evidence upon which factfinders could reasonably disagree as to whether the parties entered into a binding oral

does not mean that the evidence was excluded but rather that the parties must discuss the matter further with the trial court when effort is made to tender it into evidence at trial).

3

agreement. That the parties may have also previously executed a written contract regulating their business relationship and containing a provision requiring modification to the written contract to be in writing does not require us to conclude otherwise. Simply put, a written contract generally may be modified by a subsequent oral agreement even though the document says otherwise. *Double Diamond, Inc. v. Hilco Electric Coop, Inc.,* 127 S.W.3d 260, 267 (Tex. App.–Waco 2003, no pet.); *Mar-Lan Industries, Inc. v. Nelson,* 635 S.W.2d 853, 855 (Tex. App.–El Paso 1982, no writ). And, though there are exceptions to this rule, Farm did not assert any at bar. Therefore, we conclude that Farm was not entitled to summary judgment on this claim of breached contract given the presence of a material question of fact.

*Removing Agents and Payment of Commissions*

As previously mentioned, Farm requested summary judgment on these grounds because its alleged actions neither constituted a breach of any promise or obligation, and the Frys presented no evidence of damages arising from any purported breach. Of course, the Frys disputed this contending that a provision in their written agreement with the company obligated it to pay them their commissions. Furthermore, the damages allegedly suffered were evidenced by a brochure or advertisement explaining the "tremendous income opportunity" one could "take advantage of" selling insurance products for Farm & Ranch. In that brochure, the company described not only trips which could be won but also potential income that could be earned over the years. And, it was the potential income of a second year agent that the Frys sought to recover as damages. Yet, the potential income of a second year agent as described in the

4

brochure was "based on average first year commissions plus projected monthly renewals." Moreover, the Frys cited us to nothing of record illustrating what their actual sales were or what the sales of their agents were. Nor were we told of the percentage of commission earned on each sale, the commissions actually earned by the Frys, the commissions actually earned by the agents they recruited, the number of insureds who actually renewed their policies with Farm, or the type and quantum of products renewed by those insureds, if any. And, therein lies the problem.

When measuring damages arising from a purported breach of contract, the factfinder attempts to award just compensation for the loss actually sustained. *Stewart v. Basey,* 150 Tex. 666, 245 S.W.2d 484, 486 (1952); *Qaddura v. Indo-European Foods, Inc.,* 141 S.W.3d 882, 888 (Tex. App.–Dallas 2004, pet. denied); *Walden v. Affiliated Computer Serv., Inc.,* 97 S.W.3d 303, 328 (Tex. App.–Houston [14th Dist.] 2003, pet. denied). That loss, however, cannot be based on mere speculation or hypothesis. *See Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.,* 960 S.W.2d 41, 50 (Tex. 1998) (holding that evidence of damages based on an entirely hypothetical, speculative bargain that was never struck is not legally sufficient evidence of damages). That is the situation before us. It may be that under a particular set of circumstances, a second year Farm agent could earn a particular income and that the Frys were or were becoming second year agents. Yet, we have no evidence of the conditions upon which any particular level of compensation was dependent upon being in existence, such as the number of sales by both the Frys and their own agents and the commission earned

5

on those sales. Without such evidence, a factfinder is left to speculate about what the Frys could be earning, and speculation is not evidence.

Additionally, the brochure alluded to above does not fill the void since it was simply an advertisement discussing possibilities dependent upon various conditions. And, most importantly, no evidence appears of record illustrating that those conditions were satisfied here. Thus, we cannot say that the Frys presented sufficient evidence of damages to entitle them to submit the issue to a factfinder. Nor can we say that the trial court erred in granting summary judgment on the claims of breached contract involving the removal of agents and payment of commissions.

*Issue 2 - Fraud and Negligent Misrepresentation*

In their second issue, the Frys argue that Exhibit No. 13 constituted a false representation. Like the brochure alluded to above, Exhibit 13 purported to show the potential income earned by regional and district managers working with Farm. The compensation described, however, also was dependent upon the existence of a certain quantum of sales having a certain product mix. According to Janice Fry, she was shown this document when deciding whether to become a regional manager for Farm. However, she was later told by a marketing director for Farm that he knew of no regional manager who had earned the $575,000 sum mentioned in the document. So, in her view, the representations contained in the exhibit were fraudulent. Farm disagreed. It believed that the comments in the exhibit were neither promises nor statements of existing fact. At most, they depicted projections of what could happen in the future if certain criteria were met. The latter contentions were incorporated into a

6

motion for summary judgment which the trial court granted. The Frys now contend that the trial court erred in granting that summary judgment. We overrule the issue.

Predictions and opinions regarding the future profitability of a business generally cannot form a basis for a claim of fraud. *Maness v. Reese,* 489 S.W.2d 660, 663 (Tex. Civ. App.–Beaumont 1972, writ ref'd n.r.e.) (stating that future predictions and opinions do not serve as a basis for actionable fraud); *National Newspaper Enterprises, Inc. v. Chitwood,* 68 S.W.2d 264, 267 (Tex. Civ. App.–Dallas 1934, writ dism'd) (stating that a statement of belief as to the future earnings of a business based more or less on guesswork cannot be the basis of fraud); *see also Zar v. Omni Industries, Inc.,* 813 F.2d 689, 693 (5th Cir. 1987) (holding that in Texas, future predictions and opinions, especially those regarding the future profitability of a business, cannot, as a matter of law, form a basis for fraud). This is so because fraud generally involves the utterance of a purportedly existing fact. *Trenholm v. Ratcliff,* 646 S.W.2d 927 (Tex. 1983).

Here, the comments within Exhibit 13 and regarding the potential compensation of a regional manager fall within the category of future predictions. Again, they talk about possibilities dependent upon the occurrence of certain conditions. Those conditions include the sale of a particular "product mix," the recruiting and retention of sales agents who meet a certain weekly quota, the appointment of district managers who also produce at a particular weekly quota, and the individual sales of the regional manager. Nowhere do the utterances allude to promises of what one will make irrespective of the circumstances. And, while evidence exists of a Farm representative being unable to recall anyone ever satisfying the conditions, he did not say that the compensation

7

package could never be received or that the conditions could never be satisfied. Nor did he even say that no one has ever reached that goal; instead, he simply opined that he personally knew of no one reaching it.

In short, the document is nothing more than what it purports to be, *i.e.* a description of a "$575,000 per year opportunity" if "done properly." Being futuristic in nature and dependent upon conditions which may or may not occur, we cannot say that it constituted a misrepresentation of presently existing material fact, and the trial court did not err in concluding that Farm was entitled to summary judgment on the claim.

*Issue 3 - Directed Verdict*

Finally, the Frys complain of the trial court's decision to deny, via a directed verdict, the only claim they had left. It too involved an allegation of fraud, and Farm sought the directed verdict because it believed that the Frys had no evidence pertinent to the damages element of their cause of action. The Frys argued that they did and that it consisted of the information imparted in Exhibit 13 mentioned above. That is, Exhibit 13 evinced the income they lost due to the alleged fraud in question. Thus, the trial court acted improperly in directing a verdict, according to the Frys. We overrule the issue.[4]

To be recoverable, damages may not be too remote, too uncertain, or purely conjectural. *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 816 (Tex. 1997). Furthermore, when seeking lost income or profits, the loss must be established with reasonable certainty and through competent evidence. *Southwest Battery Corp. v.*

---

[4]We make no comment upon how information contained in Exhibit 13 can be described as inaccurate (*i.e.* containing misrepresentations regarding the potential income a regional manager could receive) under one theory of fraud but accurate for establishing damages under another theory.

*Owen,* 131 Tex. 423, 115 S.W.2d 1097, 1098 (1938); *Capitol Metro. Transp. Authority/Central of Tenn. Ry & Navigation Co. v. Central of Tenn. Ry. & Navigation Co.,* 114 S.W.3d 573, 579 (Tex. App.–Austin 2003, pet. denied). Indeed, the presentation of objective facts, figures, or data from which the amount of loss can be ascertained is necessary. *Capitol Metro. Transp. Authority/Central of Tenn. Ry & Navigation Co. v. Central of Tenn. Ry. & Navigation Co.,* 114 S.W.3d at 579. Finally, profits dependent upon uncertain or changing market conditions or changing business opportunities are speculative and, therefore, unrecoverable. *Texas Instruments, Inc. v. Teletron Energy Management,* 877 S.W.2d 276, 279 (Tex. 1994). And, that is the defect inherent in Exhibit 13.

Exhibit No. 13 was developed as a marketing device to induce individuals to become regional or district managers. And, while it spoke of income opportunities available if one were to accept such positions, the potential opportunities depended upon the satisfaction of various conditions. In other words, the exhibit's content represented a hypothetical situation that could be achieved if a certain number of agents and managers were obtained in a particular group and they, coupled with the efforts of the regional manager, sold a certain quantum of product. Though it may be possible to achieve that level of income based on the presence of those conditions, we are cited to no evidence illustrating that those conditions either arose or were satisfied here. Without that evidence, the prognostications appearing in Exhibit 13 are simply conjecture. In other words, Exhibit No. 13 lacked probative value in absence of evidence illustrating that Janice Fry would have induced a sufficient number of district

9

managers and agents to work within her group and sell the requisite amount of product to assure her the income mentioned. Simply put, it is sheer speculation to say that simply because Janice was a regional manager she would have attained the income level described in the exhibit without evidence also illustrating that she had in place the foundation necessary to secure that income. *See Metropolitan Life Ins. Co. v. Haney,* 987 S.W.2d 236, 247 (Tex. App.–Houston [14th Dist.] 1999, pet. denied) (finding that there was no evidence to support damages for fraud when the contentions that the plaintiff would have completed a sale were based on nothing more than mere conjecture and the plaintiff failed to establish, based on any objective facts or figures, that he would have earned $250,000 in commissions from working with other agents). Because of this and the absence of any other evidence evincing damages, the trial court did not err in directing a verdict in favor of Farm. *See Prudential Ins. Co. of Am. v. Financial Review Services, Inc.,* 29 S.W.3d 74, 77 (Tex. 2000) (holding that a trial court may render a directed verdict if no evidence of probative force raises a fact issue on the material questions involved).

Accordingly, we reverse that part of the judgment denying Janice Fry recovery upon her claim that Farm breached its agreement to reimburse her for the cell phone expenses she incurred per the directives of Farm; that issue is remanded for further proceedings. In all other things, the judgment is affirmed.


Brian Quinn
Chief Justice


10