### KING v. McADAMS.

(Court of Civil Appeals of Texas. Texarkana. Feb. 29, 1912. Rehearing Denied March 21, 1912.)

EXCHANGE OF PROPERTY (§ 3*)—MISREPRESENTATION BY SELLER—RIGHTS OF BUYER.

Defendant was entitled to rescind his contract to exchange an equity in land worth $11,000 for a stock of goods estimated to be worth that amount, it being agreed that, if the stock should invoice more than the value of the land, defendant should pay the difference in cash, where the stock actually invoiced nearly $20,000, though plaintiff had estimated that it would not exceed $11,000, it being found that plaintiff knew, or was in a position to know, that the stock would invoice much more than $11,000, and that defendant was induced to contract in reliance on that representation, and it being immaterial whether plaintiff intended to deceive defendant or not.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. §§ 3, 7; Dec. Dig. § 3.*]

Appeal from District Court, Hunt County; R. L. Porter, Judge.

Action by E. G. King against R. B. McAdams. Judgment for defendant, and plaintiff appeals. Affirmed.

Neyland & Neyland, of Greenville, for appellant. Looney, Clark & Leddy and Geo. S. Perkins, all of Greenville, for appellee.

HODGES, J. In July, 1910, the appellant, E. G. King, was the owner of a stock of goods in the town of Westminster in Collin county, Tex. Appellee, McAdams, was the owner of a section of land situated in Dallam county. Both of the parties were desirous of disposing of their property. Through the instrumentality of agents whom they had employed, they were brought together and entered into a written contract by which they bound themselves to an exchange of property upon substantially the following terms: King agreed to sell and convey to McAdams, free from debts and incumbrances, his entire stock of goods, consisting of dry goods, shoes, hats, caps, notions, etc. The goods were to be invoiced between the 1st and 10th of August, 1910. In exchange for the stock of goods, McAdams bound himself to convey to King his tract of Dallam county land at an agreed price of $25 per acre, aggregating $16,000. From this latter sum was to be deducted an incumbrance amounting to $5,000, with some accrued interest, which King agreed to assume. The contract then provides that "after deducting the principal and interest of said vendor's lien notes from $16,000, the agreed price to be paid for said land, the overplus be considered as a cash payment on the said stock of goods, wares and merchandise, etc., conveyed by the sec-

ond party to the first party, and if the said goods shall equal said overplus the said deed shall be received in full payment for said stock of goods, wares and merchandise, etc., by said second party; but in the event that the said goods, wares and merchandise, etc., shall invoice more than the overplus in value of said land, then the first party agrees to pay the difference between the invoice value of said stock of goods, wares and merchandise, etc., in cash to the second party immediately upon a completion of said invoice, and if the said stock of goods, wares and merchandise, etc., shall not amount to as much in value as the overplus in the value of the land agreed upon, then the party of the second part shall pay to the party of the first part the difference between the invoice value of said stock of goods, wares and merchandise, etc., and the agreed value of the land in cash immediately upon the completion of said invoice." The contract concludes with the following provision: "In order to bind this trade each party hereto deposits as a forfeit in the Greenville National Exchange Bank of Greenville, Texas, the sum of $1,000.00, the said sums to be liquidated damages to be forfeited to the other party in the event that either party hereto breaches this contract in any particular, or in the event that the title of the first party to the land hereinbefore described shall prove defective; and it is specially understood and agreed that the sums of $1,000.00 deposited by each party hereto shall be the only damages claimed by either party should this contract be breached by either party, and it is further specially understood that there are no other agreements or conditions to be considered except as stated herein." Each party made a deposit of $1,000 in the Greenville National Exchange Bank, in compliance with the terms of the above contract. The contract had been executed after a brief inspection of the stock of goods by McAdams. A few days after its execution the invoice provided for was completed, and it was found that the value of the stock of goods amounted to approximately $19,900. McAdams refused to accept them, and to otherwise carry out his contract. This suit was then instituted by King against McAdams and the bank for the purpose of recovering the deposit of $1,000 as liquidated damages for the breach.

After a general demurrer and general denial, McAdams pleaded substantially as follows: That he was not a merchant, but a farmer, was without experience in the handling of such goods, and was ignorant of the methods by which to correctly make an estimate of their value; that he entered into this contract for the purpose of disposing of his land in some way so that he might realize approximately its value, and did not desire or intend to engage in the mercantile business; that he was merely taking the goods in exchange as a method of converting

his land into money; that the plaintiff in person and through his agents represented that the invoice value of the goods would not exceed $9,000, but that, if it did invoice more than that sum, it would in no event exceed $11,000; that this representation was made in order to induce defendant McAdams to enter into the contract, because the value placed by him upon his land, less the incumbrance, aggregated only $11,000. He further alleged that, if the goods had not exceeded the estimate, he would not have been called upon to pay any excess in money between the exchange values of the property; that he really expected that some money would be coming to him when the final balance had been struck. He claims that he was deceived by the misrepresentations of King and his agents with reference to the value of the goods, that he relied upon those representations, and was thereby induced to enter into the written contract upon which this suit was based. In conclusion he asked to be relieved from the terms of the contract by reason of the great discrepancy in the price, which he says in one part of his petition was due to the fraud and willful misrepresentation on the part of King and his agents, and in another to a mutual mistake made by both him and King in their estimates. A trial before the court without a jury resulted in a judgment in favor of McAdams.

The court filed conclusions of law and fact, of which the following is the substance: That McAdams had been mainly engaged in farming, and that, while he had previously had some connection with the grocery business, he had mainly been a farmer, and was not familiar with dry goods; that King and his agents had represented to McAdams that the stock of goods would invoice from $9,000 to $11,000, and that the value of McAdams' land, less the incumbrance, would aggregate $11,000; that McAdams did not desire to purchase a stock of goods, and would not have done so if he had been required to pay cash, or any considerable amount of cash, therefor; that his only reason for being willing to trade for King's stock of goods was that he might use that as a means of speedily converting his land into money, and relieve himself of the incumbrance. The court also found that all these facts were known to King and to his agents before the contract was executed and at the time the representations as to the amount the goods would invoice were made; that McAdams was induced to execute the contract in reliance on the representations made by King that the stock of goods would invoice from $9,000 to $11,000; and that had he known that it would have invoiced any sum beyond a very small amount above $11,000 he would not have executed the contract. The court further found that the plaintiff King and his agents at the time they made the representations before mentioned knew, or were in possession of facts from which an ordinarily prudent person should have known, that such representations were not true, and that the amount they represented that the stock of goods would invoice was grossly under what they knew, or should have known, the invoice would amount to. In addition to the above, he found that if King and his agents did not actually know that their representations as to the invoice value of the goods were untrue, and actually believed that they were correctly stating the amount, then they were mistaken, and the defendant McAdams was also mistaken in that particular, and that the mistake is so gross, and the excess in said invoice so unreasonable, that the minds of the parties never in fact met on the real subject-matter of the trade. From these and other findings, not material here to mention, the court concluded as a matter of law that the plaintiff was not entitled to recover, that the $1,000 deposited in the bank by McAdams should be restored to McAdams, and entered judgment accordingly.

It is claimed by the appellant that the court erred in the following particulars in his conclusions of fact: (1) In finding that the appellant knew, or was in a position to know, that the stock of goods would invoice largely in excess of $11,000; (2) that McAdams was induced to execute the contract while relying on the representation that the stock would not invoice more than $11,000; (3) that the court erred in finding that King and his agents were in possession of facts from which an ordinarily prudent person would have known that the representations made by them as to the invoice value of the stock of goods was grossly under what they knew it should have been.

It would serve no useful purpose to here reproduce the testimony upon which the conclusions of the court were based. An examination of the evidence has satisfied us that those conclusions are fully supported. According to the testimony of McAdams, he was unskilled in the matter of estimating the value of a stock of goods like that for which he was trading his land. He was making the exchange solely as a means of converting his land into money, and did not desire to embark in the mercantile business. He relied mainly upon the estimate placed by King and his agents as to what the stock would invoice. The facts also show that the goods had been in that building only about three months; that King knew how much had been put in there during that time, and, according to his own admissions, the total amount placed there amounted to approximately $22,000. His excuse for having no better acquaintance with the value of the stock is that he had shipped out some of the goods, of which he had kept no invoice, and that some had been sold in the ordinary course of business. The testimony further shows that but a very small portion had

been shipped away, that the town of Westminster was a mere village of only a few hundred inhabitants, and there was nothing to indicate that the trade had been large. If King, being an experienced merchant, while in the possession of these facts, could be so greatly deceived concerning the probable value of the stock of goods at that time on hand, it would be difficult to understand why a mere novice like McAdams, who, with only a few hours of time in which to make an inspection, should be charged with knowing more. The difference between the actual value and that at which the parties estimated the goods was of sufficient magnitude to warrant the court in saying that it was material to the transaction, and justify him in granting McAdams relief from the terms of his contract. If King ventured to express an estimate of the value of the goods when called upon by McAdams, it was his duty to give an estimate as nearly correct as he could. He was in a position to make approximately a correct estimate, and he must have known that what he said would be relied on as the basis of the trade. It is immaterial whether King intended to deceive McAdams or not. If he did, in fact, mislead him concerning an important detail of the transaction, and stated facts which, if known by McAdams to be untrue, would have prevented the making of the contract, it would be inequitable to permit him to profit by his own deception. Culbertson v. Blanchard, 79 Tex. 486, 15 S. W. 700; Watson v. Baker, 71 Tex. 739, 9 S. W. 867; Ramey v. Allison, 64 Tex. 697.

This is not a suit in which the defendant is attempting to vary the terms of a written contract by ingrafting parol conditions, but is one in which he is seeking relief from the terms of a contract he was duped into making; hence there is no merit in the assignments of error which attack the judgment of the court upon those grounds.

The court having reached the conclusions of fact set forth in his findings, we think the judgment was properly entered in favor of the appellee; and it is accordingly affirmed.