## NATIONAL NEWSPAPER ENTERPRISES, Inc., v. CHITWOOD.

### No. 11346.

Court of Civil Appeals of Texas. Dallas.

Jan. 27, 1934.

Rehearing Denied Feb. 24, 1934.

Elihu E. Berwald, of Dallas, for appellant.

Eugene De Bogory and Owen T. Lewis, both of Dallas, for appellee.

JONES, Chief Justice.

Appellee, Mrs. Ida M. Chitwood, in a suit instituted in a district court of Dallas county against appellant, was awarded a judgment of $2,000, and also a decree canceling a contract for merger of the cooking school known as the "Chitwood School of Cookery," owned by appellee, and the cooking school owned by appellant. Appellee was also awarded an injunction, perpetually enjoining appellant and its officers from using the name of appellee and her school in connection with the schools to be conducted by appellant. An appeal has been duly prosecuted, and the following are the facts:

Appellant is a corporation, duly incorporated under the laws of the state of Texas, with its principal office in the city of Dallas, and for some time prior to the summer of 1930 had conducted schools of cookery as one of its business enterprises. Its territory covered a large portion of the United States. Appellee, for approximately five years previous to the summer of 1930, had conducted cooking schools known as the "Chitwood School of Cookery." The territory in which she operated was much more limited, being mainly confined to Texas and other states nearby.

A cooking school of the kind conducted by the parties to this suit was commonly put on by a newspaper in its city, and continued for four or five successive days. It would be attended by the women of the city and immediate vicinity to the place where it was conducted, and there would be a woman lecturer explaining how certain dishes of food should be prepared, the recipes for same, and an actual preparation by the lecturer of food from the recipes. The one in charge of the cooking school would be paid by the newspaper under whose auspices the school was conducted, and the ingredients entering into the dishes used would be furnished by the manufacturers of such ingredients. The consideration to the newspaper came from paid advertisements of the manufacturer of the food products used by the lecturer in her demonstrations. In schools conducted by appellee, she was usually the lecturer, and her prof-

its came from the sum paid by the newspaper for conducting the school. The same manner was observed by the schools conducted by appellant; it using its own lecturer and demonstrator and its remuneration coming from the same source.

There were what is termed "fall" and "spring" terms of these schools. The fall term would begin in the early days of September, and last ordinarily through November; the spring term would begin in January and last to June. The owner of the school of cookery would secure from the manufacturers of food products, to be used in demonstration of recipes, a certain amount of advertising of their respective products for the newspaper, which was to conduct the school. Ordinarily, the advertising would amount to 10,000 lines of the advertising space of the newspaper, to be paid by the manufacturer at the established rates of such newspaper. The newspaper would then secure the hall in which the school was to be conducted and put on an advertisement in its paper for the school, so as to acquaint the women with both the fact that a school was to be held and with the character of such school. Contracts for conducting schools for the fall term would be signed in the early summer, and contracts for schools for the spring term would be signed during the fall months. It would be known by the end of summer approximately the number of schools that would be conducted during the fall term, and the amount the conductor of each school would receive for the work. It would be known by the end of the fall term the number of schools that would be conducted in the spring, and the amount the owner of the school would receive for the schools in the spring term.

As early as June, 1930, conferences were held between appellee and appellant, through Mr. George Provine, appellant's president and manager, looking to the merging of the two schools. These conferences continued at times during the summer and into November of 1930, before an agreement was finally reached. The conferences were usually sought by appellant, and appellee, according to her testimony and which appears to have been adopted by the jury, did not become interested until just before the contract to merge was entered into, November 10, 1930. The cause of appellee's changed attitude in respect to the merger was that, about September 1, 1930, appellant had taken over the Ella Lehr, Inc., cooking school, operating on the West Coast, which was represented to appellee as widely extending the operation of appellant in its West Coast division, embrac-

ing about ten states. An agreement was reached between the parties to include the West Coast division in the merger, in consideration that appellee would pay to appellant the sum of $1,500. The written contract included this West Coast division with the Ella Lehr School, Inc., in such division, and provided that the parties would share equally in the profits of the merged schools. It provided that separate accounts should be kept of the income and expenditures of the cooking school combination thus formed, the income and expenditure to be handled separately from appellant's other business. It was further provided in the contract that the organization as a whole and the individuals composing it were to do everything reasonably practicable to maintain the high business and financial standing of the organization; that both parties of the contract should have access to the books of the organization; that the bills and assets of either organization, previous to the merger, were not to apply against the merged organization, but should remain as assets and liabilities of the old organizations, National Newspaper Enterprises, Inc., and Chitwood School of Cookery. This contract was to run for a period of 20 years.

It was represented to appellee by appellant, through Provine, its president and manager, that a profit of $5,000 would result to appellant from the operation of the fall term of schools on the West Coast division, and that over 150 schools had been signed up on the West Coast division for the spring term, and that a profit of $10,000 would be the result of conducting said schools. Appellee believed these representations, relied upon their truthfulness, and was induced thereby to execute the contract of merger, and to pay the cash consideration of $1,500, as per the contract. It was agreed by the parties, at the time the contract was entered into, that there would be a subsequent agreement as to the name to be given the partnership thus formed, and that such name would be a composite of the two schools. This agreement was not carried out by appellant.

After the contract had gone into effect, by agreement between the parties, each party to the merger deposited in a Dallas bank the sum of $500, to be used as a joint fund to finance the schools in the Dallas division; it being understood that the West Coast division would be financed from the San Francisco office. Virtually this entire sum was used by appellant for the West Coast division, without the knowledge or consent of appellee.

It was later discovered by appellee that the representations that the fall schools of the West Coast division would make a profit of $5,000 was untrue, and that no profit was made from the operation of such schools. It was likewise later discovered by appellee that, instead of an excess of 150 schools having been signed for the spring term of the West Coast division, only 95 schools had been so signed, and that the profit made by the conduct of such schools was approximately $500.

On January 30, 1931, appellee instituted this suit to cancel and declare void the contract of merger, because of the misrepresentations made to her in reference to the business secured by appellant for the West Coast division, and to recover the sum of $1,500 she had paid as a consideration for merging her school with that of appellant, and also to recover the $500 she had deposited in the joint account to be used in financing the schools of the Dallas division. The allegations in the petition, setting out the fraudulent representations, alleged to have been practiced by appellant in inducing her to enter into the contract, are full and complete, and form a basis for the judgment entered. Appellant, in its answer, denied these allegations of misrepresentations, denied that any fraud was practiced upon appellee to induce her to enter into the contract of merger, and its defensive pleading in this respect is full and complete, and would have been a sufficient basis for a judgment in its favor.

■ The case was tried to a jury, submitted on special issues, and the following represents the substance of the findings: (1) Appellant represented to appellee that, previous to the signing of the contract of merger, appellant had signed up 150 schools in the West Coast division; (2) that this representation was false; (3) that appellee relied on said representation, and was induced thereby to enter into the contract of merger; (4) that appellant represented to appellee that the schools in the West Coast division would earn net for the fall of 1930 the sum of $5,000; (5) that such representation was false; (6) that appellee relied upon and was induced by said representation to enter into the agreement; (7) that appellant represented to appellee that the West Coast division would earn, net, the sum of $10,000, for the spring of 1931; (8) that such representation was false; (9) that appellee relied upon and was induced by said representation to enter into the agreement; (10) that appellant and appellee agreed that the partnership entered into by the contract would be designated by a name, which was a composite of the two schools; (11) that appellant failed to keep its promise and agreement with appellee in respect to such name. These findings, though on conflicting testimony, are supported by evidence, are binding on this court, and are adopted as the findings of fact on the disputed issues submitted to the jury.

■ It is earnestly insisted by appellant that there is no proper basis for submission to the jury of the issues of alleged misrepresentation and fraud, in that the pleadings and the evidence, when considered most favorably to appellee, show that any statements made to appellee, in reference to the earnings of the West Coast school, were the mere expression of an opinion of appellant's representative as to what he believed the schools would earn in the fall and spring terms, and did not purport to be a statement of a fact; also that the statement of the number of schools in the West Coast division signed up for the spring term, shows on the face of the testimony to be only an estimate of the number of schools that would be signed up. We do not question the proposition of law that a statement of the belief of the future earnings of a business, necessarily based more or less upon guesswork, cannot be made the basis for a charge of fraud, or for awarding damages. Burchill v. Hermsmeyer (Tex. Civ. App.) 212 S. W. 767; Laybourne v. Bray & Shifflett (Tex. Civ. App.) 190 S. W. 1159; Jones Lbr. Co. v. Villegas, 8 Tex. Civ. App. 669, 28 S. W. 558; New York Life Ins. Co. v. Miller, 11 Tex. Civ. App. 536, 32 S. W. 550; Commonwealth Bonding & Cas. Ins. Co. v. Barrington (Tex. Civ. App.) 180 S. W. 936; Lott Town & Imp. Co. v. Harper et al. (Tex. Civ. App.) 204 S. W. 452; 26 C. J. 1087.

■ However, we do not construe the testimony of appellee on this issue as appellant apparently construes it. Appellant's president, who carried on the negotiations with appellee, and appellee herself were experienced conductors of cooking schools. The evidence is to the effect that cooking schools for the fall term are signed up in the early summer; that, when cooking schools are signed up, and it is known the compensation that will be paid the conductor of schools, the net income from such schools can be definitely estimated. The testimony further is to the effect that the contracts for the schools in the spring term are signed in the fall, and that, at the time this contract was signed, an experienced conductor of such schools could estimate, with reasonable certainty, the net

profits that would be received from the spring term. It is true there is evidence to the effect that newspapers can repudiate contracts for cooking schools, after such contracts have been made, but no evidence is offered tending to show that any such repudiation occurred in the West Coast division for the spring term of 1931. We therefore overrule this contention, and hold that the court did not err in overruling appellee's special exceptions to the pleading, in respect to this issue; did not err in admitting the testimony in respect to appellant's representation as to the amount that the West Coast schools would earn in the fall and spring terms; did not err in overruling appellant's objection to the submission of the issues; and did not err in holding that the findings of the jury, in respect to such issues, was a sufficient basis for the cancellation of the contract on the ground of fraud, and for awarding appellee judgment for the $1,500, paid as a consideration for including the West Coast schools in the terms of the contract. King v. McAdams (Tex. Civ. App.) 145 S. W. 1032; Tips v. Barneburg (Tex. Civ. App.) 11 S.W.(2d) 187; Morrison et al. v. Cotton et ux. (Tex. Civ. App.) 152 S. W. 866; Riedel v. C. R. Miller Mfg. Co. (Tex. Civ. App.) 18 S. W.(2d) 264; 20 C. J. parag. 57, pp. 91, 92.

We overrule appellant's contention that reversible error was committed in admitting a letter from a customer of the schools, after the merger had taken effect, addressed to appellee, and objecting to the charge of a service fee against him, in addition to the cost of advertisement of his food products. This service fee was attempted to be charged against such manufacturer of food on the specific direction of appellant's manager, and against the protest of appellee, and was a charge that appellant's president claimed to be perfectly legitimate, and so testified at the trial of the cause. If it was not admissible, the error, because of appellant's contention in the evidence of its manager before the jury, in respect to the righteousness of such charge, was necessarily harmless. There are other assignments of error, on admission of evidence, which we have carefully examined, with the result that we conclude that none of them show reversible error.

There are five assignments of error, in respect to argument indulged in by the attorney for appellee, both in his opening address to the jury and in his concluding address. The trial court has appended the same qualification to each of these bills of exception, which is to the effect that the argument of appellee's attorney was taken down by the court reporter, and that during such argument the attorneys for appellant made such objections and took such exceptions, privately, to the court without interrupting the plaintiff's attorney, and without the knowledge of plaintiff's attorney that any exception was being taken. There was no requested charge not to consider such arguments.

One of these arguments is to the effect that, if the jury believed the testimony of appellant's witnesses, they would have to decide against Mrs. Chitwood, but, if they believed her testimony, they would have to decide in her favor. This argument appears to have been a general argument, without specific application to any special issue submitted to the jury. The evidence of appellee, on each issue of fraud, is in direct conflict with the evidence of appellant. We find no reversible error in the argument complained of.

The argument, as reflected by bill of exception No. 2, is shown to have been on evidence admitted, and also in answer to contentions of appellant, and the assignment of error, based on this bill of exception, is overruled.

Bill of exception No. 3 relates to a witty but sarcastic argument, in reference to the repeated attempts of appellant's counsel, during the trial of the case, to prevent the introduction in evidence of a certain letter that appellant's attorney apparently thought had considerable bearing upon the case; while the argument may be described as being on the border line, still we are of the opinion that it is not reversible error, especially in view of the court's qualification of the bill of exception, as above stated, and no requested charge not to consider such argument.

The argument represented by the fourth bill of exception is: "I told you gentlemen that you had to find against Mrs. Chitwood; if you did that, you would have to find that she told a story. Let's not hide behind anything, let's not hide behind any elastic terms, I am going to say to you that you have to find that Papertt and Provine perjured themselves on this stand, or that Mrs. Chitwood perjured herself." This is a very blunt statement of the conditions, under which the jury had to pass on the testimony of the respective parties, as they existed at the time, but it does not present reversible error. In the statement to the jury, counsel does not himself express an opinion as to which one committed perjury, but, with blunt frankness, informs the jury that it was a thing they must determine. While it is not the polite language that this court would recommend for counsel to use in reminding a

jury of the duty resting on it, to determine which evidence should be believed, still we do not believe it presents reversible error, and overrule the assignment.

█ Bill of exception No. 5 objects to an argument directed against an officer of appellant, because he was drawing $1,000 a month salary and was not devoting his entire time to the business of the corporation, but was devoting a good deal of his time to other business. We do not think this presents reversible error.

█ The $500 item allowed in the judgment is for reimbursing appellee for money she deposited in the joint account of the merged corporations, before she discovered the fraud practiced upon her. It is shown by competent evidence that virtually all of this money was spent by appellant on the West Coast schools, and none of it for the benefit of appellee, in the event the merger contract should be declared void. We believe there was no error in allowing appellee reimbursement for such sum.

It necessarily follows that, in our opinion, the judgment of the lower court should be affirmed, and it is so ordered.

Affirmed.