Opinion issued April 10, 2003



 








In The

Court of Appeals

For The

First District of Texas






NO. 01-02-00023-CV






RAMESH KAPUR, Appellant


V.


MARK GOLDSTEIN AND PAUL T. COTHRAN, Appellees






On Appeal from the 113th District Court

Harris County, Texas

Trial Court Cause No. 00-30355






MEMORANDUM OPINION


 This is an appeal of summary judgments rendered for defendants/appellees
Mark Goldstein and Paul T. Cothran on plaintiff/appellant Ramesh Kapur's claims
for fraud, breach of contract, breach of fiduciary duty, and violation of section 27.01
of the Business and Commerce Code. (1) In five points of error, Kapur challenges the
rendition of summary judgment on each of his claims against both defendants. We
affirm.

Factual & Procedural Background


 Goldstein was a close and trusted personal friend of Kapur's. When Goldstein
suggested that Kapur join him in an investment opportunity, Kapur agreed to meet
with Cothran, a principal at Allied National Gas Corporation, to discuss the
opportunity. The proposed investment was in the Alligator Point Prospect, an oil and
gas production securities project in Brazoria County. It is not entirely clear from the
record what this investment actually entailed or how it would produce a profit. 
Nevertheless, 60 "units" were available for purchase at $1,000 each. Goldstein
suggested that he and Kapur buy 30 units apiece and finance the purchases by writing
checks to Allied for $18,000 and executing promissory notes for the remaining
$12,000 each would owe.

 Kapur and Goldstein met with Cothran on July 17, 1996. During the meeting,
as they had agreed, Kapur and Goldstein decided to purchase 30 units each; they each
tendered $18,000 checks to Cothran, and Kapur signed a promissory note for
$12,000. Kapur then left the meeting. The next day, Cothran's agent, John Durrani,
called Kapur to tell him that, on the previous day, Goldstein requested and was given
his check back and had withdrawn from the project. Upon learning this, Kapur also
asked for his check and promissory note to be returned to him. Cothran agreed to
return these, but did not do so. At the time he wrote the check, Kapur had only
$17,426 in his checking account. Kapur did not request a stop-payment from his
bank, but he informed Cothran that the check would be refused for insufficient funds,
and it was. However, there was a $600 deposit made to Kapur's account. Kapur says
neither he nor anyone in his family made this deposit. Around August 2, 1996, once
the $600 was deposited and Kapur's balance topped $18,000, someone cashed the
check and obtained a cashier's check from the Allen Parkway branch of Kapur's
bank--a branch he asserts he has never used. Kapur never obtained a return of the
$18,000 or the promissory note. 

 Fours years later, Kapur sued Goldstein and Cothran for fraud, breach of
contract, breach of fiduciary duty, and violation of section 27.01 of the Business and
Commerce Code. He claimed that because of Goldstein and Cothran's false
representations he had been lured into investing in the Alligator Point Project and had
been harmed when the investment failed to make a profit. After the trial court granted
Goldstein's and Cothran's motions for no-evidence summary judgment and overruled
Kapur's motion for new trial, this appeal ensued.


The Summary Judgments


 Goldstein and Cothran retained separate counsel, but filed virtually identical
motions for no-evidence summary judgment. Rule 166a(i) provides that, after
adequate time for discovery, a party without presenting summary judgment evidence
may move for summary judgment on the ground that there is no evidence of one or
more essential elements of a claim or defense on which an adverse party would have
the burden of proof at trial. The motion must state the elements as to which there is
no evidence. The court must grant the motion unless the respondent produces
summary judgment evidence raising a genuine issue of material fact. Tex. R. Civ. P.
166a(i). In his response to the motions, Kapur filed an affidavit in which he
recounted the sequence of events described above and stated that he relied on
Goldstein's representations that he would be investing in the project and that it would
be profitable from day one in deciding to invest in the project. He described these
statements as being "significant and material" to his investment because he
considered Goldstein his confidant, and trusted and relied on him. He noted that the
representations were false and were made to induce him into investing. 

 Kapur noted he also relied on Cothran's representation that Goldstein would
be an investor and that the project would be ongoing and profitable from "date one"
in deciding to invest. He further testified that Cothran made an oral agreement to
return his check, but cashed it instead.

 Standard of Review

 We review rendition of judgment on a no-evidence motion for summary
judgment in the same manner that we review a motion for directed verdict. Flameout
Design & Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex.
App.--Houston [1st Dist.] 1999, no pet.). In response to a no-evidence summary
judgment motion, the respondent must present some summary judgment evidence
raising a genuine issue of material fact on each element that is challenged, or the
motion must be granted. Tex. R. Civ. P. 166a(i); Howell v. Hilton Hotels Corp., 84
S.W.3d 708, 715 (Tex.App.--Houston [1st Dist.] 2002, pet. stricken). We consider
all of the evidence in the light most favorable to the nonmovant and disregard all
evidence and inferences to the contrary. Id. A defendant is entitled to rendition of
summary judgment after filing a no-evidence motion if the plaintiff is unable to
provide proof sufficient to establish each element of his cause(s) of action. Howell,
84 S.W.3d at 715. We will address each claim against each defendant under this
standard of review.

 Fraud

 In points of error one and two, Kapur contends that the trial court erred in
rendering summary judgment on his claims for fraud against Goldstein and Cothran. 
The elements of a cause of action for fraud are: (1) that a material representation was
made; (2) the representation was false; (3) when the representation was made, the
speaker knew it was false or made it recklessly without any knowledge of the truth
and as a positive assertion; (4) the speaker made the representation with the intent
that the other party should act upon it; (5) the party acted in reliance on the
representation; and (6) the party thereby suffered injury. In re FirstMerit Bank, N.A.,
52 S.W.3d 749, 758 (Tex. 2001).

 Kapur contends in his affidavit and on appeal that Goldstein made two false
material representations (first, that he would buy 30 units if Kapur bought 30 units
and, second, that the project would be profitable from the outset); that Goldstein
knew that these statements were false; and that he made them to induce Kapur to
invest in the project. Kapur contends that he wrote a check for $18,000 and executed
a promissory note for $12,000 in reliance on these representations and was harmed
when the project never made a profit. Kapur contends that Cothran made the same
misrepresentations that Goldstein made--namely, that Goldstein would be buying 30
units and that the project would be profitable from day one. In addition, he contends
that Cothran falsely represented that he would return Kapur's $18,000 check, but then
did not do so. 

 Goldstein and Cothran argue that predictions regarding profitability cannot
form the basis for a fraud claim as a matter of law. Goldstein also argues that,
because he bought the 30 units, his representation that he would do so was not false;
thus, his subsequent withdrawal from the investment is of no consequence. In this
regard, we agree. See Maness v. Reese, 489 S.W.2d 660, 663 (Tex. App.--Beaumont
1972, writ ref'd n.r.e.); Nat'l Newspaper Enterpr., Inc. v. Chitwood, 68 S.W.2d 264,
267 (Tex. Civ. App.--Dallas 1934, writ dism'd). Accordingly, the fraud claim
against both Cothran and Goldstein rests solely on Kapur's contention that Cothran
falsely promised to return the $18,000 check, but did not do so, causing him to
become an investor in a project that made no profit.

 Goldstein and Cothran contend that Kapur has not presented more than a
scintilla of evidence of fraud, merely speculation and surmise. If a nonmovant
presents more than a scintilla of evidence raising a fact issue, summary judgment is
not proper. Greenhouse v. Alvin Indep. Sch. Dist., 17 S.W.3d 419, 423 (Tex.
App.--Houston [1st Dist.] 2000, no pet.). There is more than a scintilla of evidence
when the evidence rises to a level that would enable reasonable and fair-minded
persons to differ in their conclusions. Merrel Dow Pharms., Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997); Marcia v. Fiesta Mart, Inc., 988 S.W.2d 316, 317 (Tex.
App.--Houston [1st Dist.] 1999, no pet.). We agree that the evidence presented to
the trial court did not rise to a level of proof of fraud that would have enabled
reasonable and fair-minded persons to differ in their conclusions. 

 Kapur had ample time to obtain and present to the trial court evidence to
support his claim for damages due to fraud, but he did not do so. He simply
submitted his affidavit setting out the sequence of events and his interpretation of the
events. The record contains no evidence to show that Kapur wrote a check for
$18,000, or that it was cashed, or by whom; no copy of the promissory note or a
record of payments made on the note; no documentation of the project itself; and
nothing to show whether the project was profitable or not or whether Kapur made or
lost money. Mere conclusions are not sufficient to raise a fact issue precluding
summary judgment. Gaines v. Hamman, 358 S.W.2d 557, 562 (Tex. 1962). Kapur
failed to raise a material fact issue as to his claim that a false material representation
was made or that he relied on such a misrepresentation to his detriment.

 Moreover, there is nothing in the record to indicate that Cothran's failure to
return Kapur's check, even if true, proximately caused Kapur to lose profits. Kapur's
true fraud claim seems to be that an investor who invests in a money-losing project
is entitled to the return of his invested money. That is not the law. To recover for
fraud, a party must show that an alleged misrepresentation proximately caused his
damages. Prudential Ins. Co. v. Jefferson Assocs., Ltd., 896 S.W.2d 156, 161 (Tex.
1995). Kapur has produced no evidence that any representation he claims was made
to induce him to invest proximately caused the damages he claims to have
suffered--lost profits on his investment. Accordingly, we hold that Kapur did not
meet his burden to present evidence sufficient to defeat summary judgment. 

 We overrule points of error one and two.


 Breach of Contract

 In point of error three, Kapur contends that the trial court erred in rendering
summary judgment on his breach of contract claim against Cothran. In his brief,
Kapur characterizes his claim as one for promissory estoppel. Cothran responds to
this point of error by presenting the elements for breach of contract, but not
promissory estoppel, and does not argue that Kapur has waived the claim. 
Promissory estoppel is a form of breach of contract that may be raised when the
underlying facts support such a claim. See Moore Burger, Inc. v. Phillips Petroleum
Co., 492 S.W.2d 934 (Tex. 1972).

 The elements of promissory estoppel are (1) a promise, (2) foreseeability that
the promisee would rely on the promise, and (3) substantial reliance by the promisee
to his detriment. Adams v. Petrade Int'l, Inc., 754 S.W.2d 696, 707 (Tex.
App.--Houston [1st Dist.] 1988, writ denied). In his affidavit, Kapur contends that
Cothran promised to return his $18,000 check but, instead, cashed it. He asks this
Court to take judicial notice that he could have stopped payment on the check on July
18, but did not do so in reliance on Cothran's promise. On August 2, the check was
presented to Kapur's bank and was honored. Kapur argues that injustice can only be
avoided by the return of his money. 

 Cothran argues that these are merely legal conclusions, not facts. We agree. 
As was necessary to prevail on his fraud claims, Kapur was required to present more
than a scintilla of evidence that he was damaged when Cothran breached his promise
to return Kapur's check. Kapur submitted only his affidavit. He did not present a
copy of the check or bank records to show when it was cashed or by whom. He did
not submit any evidence regarding whether he made or lost money on this investment. 
By not presenting such evidence, Kapur did not establish detrimental reliance and
damages sufficient to defeat a no-evidence motion for summary judgment.

 We overrule point of error three.

 Breach of Fiduciary Duty

 In point of error four, Kapur contends that the trial court erred in rendering
summary judgment on his claims for breach of fiduciary duty against Goldstein and
Cothran. To recover for such a claim, a plaintiff must establish (1) the existence of
a fiduciary relationship; (2) breach of the duty; (3) causation; and (4) damages. 
Parks-Davis Auctioneers, Inc. v. Verna Drilling Co., 589 S.W.2d 168, 169 (Tex. Civ.
App.--El Paso 1979, writ dism'd).

 Goldstein and Cothran argue that they did not have a fiduciary relationship
with Kapur. We agree. Kapur's affidavit, although it shows he relied on both
Goldstein and Cothran to deal fairly with him, sets out no facts from which we could
infer the relationships rose to the level of fiduciary ones. Customarily, such a
relationship arises from such special relationships as principal-agent, attorney-client,
or guardian-ward. Thigpen v. Locke, 363 S.W.2d 247, 253 (Tex. 1962). There is no
such formal relationship here. A fiduciary relationship may also arise from other
circumstances, but because a fiduciary relationship is an extraordinary one, it will not
be lightly created. Hoggett v. Brown, 971 S.W.2d 472, 488 (Tex. App.--Houston
[14th Dist.] 1997, no pet.). It is well settled in Texas that the fact that one person
trusts another is not sufficient to create a fiduciary relationship. Id.; see also Thigpen,
363 S.W.2d at 253. 

 Kapur's reliance on Sanus/New York Life Health Plan, Inc. v. Dube-Seybold-Sutherland Mgmt., Inc., 837 S.W.S.W.2d 191, 199 (Tex. App.--Houston [1st Dist.]
1992, no writ), to support his argument that he had a fiduciary relationship with both
Goldstein and Cothran is misplaced. The court in Sanus was dealing with a formal
contractual relationship that encompassed a duty of good faith and fair dealing. Id. 
At most, the relationship Kapur had with Goldstein was that of one trusted friend and
neighbor with another. Goldstein was not a professional investment advisor, nor does
Kapur itemize previous financial dealings between the two that show Kapur was in
the habit of relying on Goldstein's advice and Goldstein knew it. As for Cothran, the
investment meeting was the pair's first encounter. Cothran was attempting to sell an
investment to Kapur. He was not acting as a financial advisor or a broker. In sum,
there is simply no evidence in Kapur's affidavit to suggest his relationship with either
Goldstein or Cothran was a fiduciary one. 

 We overrule point of error four.

 Violation of Business & Commerce Code

 In point of error five, Kapur contends that the trial court erred in rendering
summary judgment on his statutory fraud claim based on section 27.01 of the
Business and Commerce Code. 

 Section 27.01 provides:

 (a) Fraud in a transaction involving real estate or stock in a corporation
or joint stock company consists of a


 (1) false representation of a past or existing material fact, when the false
representation is
 (A) made to a person for the purpose of inducing that person to
enter into a contract; and
(B) relied on by that person in entering into that contract; or


 (2) false promise to do an act, when the false promise is
 (A) material;
(B) made with the intention of not fulfilling it;
(C) made to a person for the purpose of inducing that person to
enter into a contract; and
(D) relied on by that person in entering into that contract.


 (b) A person who makes a false representation or false promise commits
the fraud described in Subsection (a) of this section and is liable to the
person defrauded for actual damages.


 (c) A person who makes a false representation or false promise with
actual awareness of the falsity thereof commits the fraud described in
Subsection (a) of this section and is liable to the person defrauded for
exemplary damages. Actual awareness may be inferred where objective
manifestations indicate that a person acted with actual awareness.


 (d) A person who (1) has actual awareness of the falsity of a
representation or promise made by another person and (2) fails to
disclose the falsity of the representation or promise to the person
defrauded, and (3) benefits from the false representation or promise
commits the fraud described in Subsection (a) of this section and is
liable to the person defrauded for exemplary damages. Actual
awareness may be inferred where objective manifestations indicate that
a person acted with actual awareness.


 (e) Any person who violates the provisions of this section shall be liable
to the person defrauded for reasonable and necessary attorney's fees,
expert witness fees, costs for copies of depositions, and costs of court.

 Tex. Bus. & Com. Code Ann. § 27.01 (Vernon 2002).


 As Kapur points out, neither Goldstein nor Cothran specifically addressed this
claim in their motions for summary judgment. On appeal, both contend that section
21.07 is strictly limited to transactions involving the transfer of real estate, stock in
a corporation, or stock in a joint stock company. See Greenway Bank & Trust v.
Smith, 679 S.W.2d 592, 596-97 (Tex. App.--Houston [1st Dist.] 1984, writ ref'd
n.r.e.). Kapur's affidavit does not provide sufficient information from which the trial
court, or this court, could discern the exact nature of the transaction or whether it is
of a type governed by this statute , despite his description of the venture as an oil and
gas securities project and his purchase of 30 "units." 

 We overrule point of error five.

 We affirm the trial court's summary judgments.



 /s/Evelyn V. Keyes

 Justice



Panel consists of Justices Taft, Keyes, and Higley.
1. Tex. Bus. & Com. Code Ann. § 27.01 (Vernon 2002).