NO. 07-05-0221-CV

                                             IN THE COURT OF APPEALS

                                   FOR THE SEVENTH DISTRICT OF TEXAS

                                                          AT AMARILLO

                                                              PANEL B

                                                    DECEMBER 13, 2007
                                        ______________________________

                                      JANICE E. FRY and TIMOTHY J. FRY, 

                                                                                                Appellants

                                                                    v.

                                   FARM & RANCH HEALTHCARE, INC. and
BOBBY GENE STEWART, JR. a/k/a B. J. STEWART, 

                                                                                                Appellees
                                     _________________________________

                    FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

                                NO. 90,846-E; HON. ABE LOPEZ, PRESIDING
                                       _______________________________

Memorandum Opinion
                                                                                       _______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.     Appellants, Janice E. Fry and Timothy J. Fry (collectively referred to as the Frys)
appeal from a final judgment denying them relief against Farm & Ranch Healthcare, Inc.
(Farm) and Bobby Gene Stewart, Jr. a/k/a B. J. Stewart. The final judgment arose from
two partial summary judgments and a directed verdict entered by the trial court prior to
trial.


 The Frys contend that the trial court erred in granting the partial summary
judgments and directing a verdict on the issue of damages since evidence of damages
existed. We reverse and remand the judgment in part and affirm in part. 
                                                            Background
     The Frys sold insurance products for Farm and allegedly were paid commissions
from their own sales and the sales of agents they recruited. Eventually, the relationship
between the parties soured, and Farm purportedly stopped paying the Frys any
commissions. This resulted in a suit against Farm and Stewart for, among other things,
fraud and breach of contract.


 The latter claim was disposed of through summary
judgment, as was one of the fraud allegations. Thereafter, and shortly before trial
began, Farm filed a motion in limine contending that any evidence of damages
pertaining to the remaining fraud claim should be excluded because the Frys failed to
disclose it in response to discovery requests. The court heard and granted the motion. 
At that point, Farm moved for the aforementioned directed verdict on the remaining
fraud claim because the Frys had no evidence of damages. The trial court granted that
motion as well, severed the remaining causes from the suit, and entered a final
judgment.


 
                                               Issue 1 - Breach of Contract 
     Regarding the claim of breached contract, the Frys asserted that Farm breached its
agreement with them when it began “removing agents and failing to pay commissions
as outlined in the Farm and Ranch commission structure.” So too did Farm’s refusal to
reimburse a $22,500 telephone expense also constitute and instance of breach,
according to the Frys. Via its motion for summary judgment, Farm averred that there
was no evidence to support its opponents’ claims. This was so because 1) concerning
the removal of agents, no evidence illustrated that Farm’s action breached any promise
it made or obligation it assumed or that the Frys suffered damage, 2) concerning the
failure to reimburse for the phone expense, it made no promise nor entered any
agreement to pay it, and 3) regarding the unpaid commissions, no evidence illustrated
that Farm neglected to pay commissions due the Frys or that they suffered damages. 
According to the Frys, however, they presented evidence sufficient to raise a fact issue
on each matter. We agree in part and disagree in part.
                                                        Phone Expenses
     According to Janice, she and Farm orally agreed that she would be reimbursed for
cell phone expenses which were in an amount of $22,500. This agreement purportedly
arose when she, as a regional manager, was told that Farm required her to provide cell
phones for her agents and that she would be reimbursed for the charges incurred. 
These circumstances, if believed, constituted some evidence upon which factfinders
could reasonably disagree as to whether the parties entered into a binding oral
agreement. That the parties may have also previously executed a written contract
regulating their business relationship and containing a provision requiring modification to
the written contract to be in writing does not require us to conclude otherwise. Simply
put, a written contract generally may be modified by a subsequent oral agreement even
though the document says otherwise. Double Diamond, Inc. v. Hilco Electric Coop, Inc.,
127 S.W.3d 260, 267 (Tex. App.–Waco 2003, no pet.); Mar-Lan Industries, Inc. v.
Nelson, 635 S.W.2d 853, 855 (Tex. App.–El Paso 1982, no writ). And, though there are
exceptions to this rule, Farm did not assert any at bar. Therefore, we conclude that
Farm was not entitled to summary judgment on this claim of breached contract given
the presence of a material question of fact. 
                               Removing Agents and Payment of Commissions
     As previously mentioned, Farm requested summary judgment on these grounds
because its alleged actions neither constituted a breach of any promise or obligation,
and the Frys presented no evidence of damages arising from any purported breach. Of
course, the Frys disputed this contending that a provision in their written agreement with
the company obligated it to pay them their commissions. Furthermore, the damages
allegedly suffered were evidenced by a brochure or advertisement explaining the
“tremendous income opportunity” one could “take advantage of” selling insurance
products for Farm & Ranch. In that brochure, the company described not only trips
which could be won but also potential income that could be earned over the years. And,
it was the potential income of a second year agent that the Frys sought to recover as
damages. Yet, the potential income of a second year agent as described in the
brochure was “based on average first year commissions plus projected monthly
renewals.” Moreover, the Frys cited us to nothing of record illustrating what their actual
sales were or what the sales of their agents were. Nor were we told of the percentage
of commission earned on each sale, the commissions actually earned by the Frys, the
commissions actually earned by the agents they recruited, the number of insureds who
actually renewed their policies with Farm, or the type and quantum of products renewed
by those insureds, if any. And, therein lies the problem.  
     When measuring damages arising from a purported breach of contract, the factfinder
attempts to award just compensation for the loss actually sustained. Stewart v. Basey,
150 Tex. 666, 245 S.W.2d 484, 486 (1952); Qaddura v. Indo-European Foods, Inc., 141
S.W.3d 882, 888 (Tex. App.–Dallas 2004, pet. denied); Walden v. Affiliated Computer
Serv., Inc., 97 S.W.3d 303, 328 (Tex. App.–Houston [14th Dist.] 2003, pet. denied). That
loss, however, cannot be based on mere speculation or hypothesis. See Formosa
Plastics Corp. USA v. Presidio Engineers & Contractors, Inc., 960 S.W.2d 41, 50 (Tex.
1998) (holding that evidence of damages based on an entirely hypothetical, speculative
bargain that was never struck is not legally sufficient evidence of damages). That is the
situation before us. It may be that under a particular set of circumstances, a second
year Farm agent could earn a particular income and that the Frys were or were
becoming second year agents. Yet, we have no evidence of the conditions upon which
any particular level of compensation was dependent upon being in existence, such as
the number of sales by both the Frys and their own agents and the commission earned
on those sales. Without such evidence, a factfinder is left to speculate about what the
Frys could be earning, and speculation is not evidence.
     Additionally, the brochure alluded to above does not fill the void since it was simply
an advertisement discussing possibilities dependent upon various conditions. And,
most importantly, no evidence appears of record illustrating that those conditions were
satisfied here. Thus, we cannot say that the Frys presented sufficient evidence of
damages to entitle them to submit the issue to a factfinder. Nor can we say that the trial
court erred in granting summary judgment on the claims of breached contract involving
the removal of agents and payment of commissions. 
                               Issue 2 - Fraud and Negligent Misrepresentation
     In their second issue, the Frys argue that Exhibit No. 13 constituted a false
representation. Like the brochure alluded to above, Exhibit 13 purported to show the
potential income earned by regional and district managers working with Farm. The
compensation described, however, also was dependent upon the existence of a certain
quantum of sales having a certain product mix. According to Janice Fry, she was
shown this document when deciding whether to become a regional manager for Farm. 
However, she was later told by a marketing director for Farm that he knew of no
regional manager who had earned the $575,000 sum mentioned in the document. So,
in her view, the representations contained in the exhibit were fraudulent. Farm
disagreed. It believed that the comments in the exhibit were neither promises nor
statements of existing fact. At most, they depicted projections of what could happen in
the future if certain criteria were met. The latter contentions were incorporated into a
motion for summary judgment which the trial court granted. The Frys now contend that
the trial court erred in granting that summary judgment. We overrule the issue.
     Predictions and opinions regarding the future profitability of a business generally
cannot form a basis for a claim of fraud. Maness v. Reese, 489 S.W.2d 660, 663 (Tex.
Civ. App.–Beaumont 1972, writ ref’d n.r.e.) (stating that future predictions and opinions
do not serve as a basis for actionable fraud); National Newspaper Enterprises, Inc. v.
Chitwood, 68 S.W.2d 264, 267 (Tex. Civ. App.–Dallas 1934, writ dism’d) (stating that a
statement of belief as to the future earnings of a business based more or less on
guesswork cannot be the basis of fraud); see also Zar v. Omni Industries, Inc., 813 F.2d
689, 693 (5th Cir. 1987) (holding that in Texas, future predictions and opinions,
especially those regarding the future profitability of a business, cannot, as a matter of
law, form a basis for fraud). This is so because fraud generally involves the utterance of
a purportedly existing fact. Trenholm v. Ratcliff, 646 S.W.2d 927 (Tex. 1983).
     Here, the comments within Exhibit 13 and regarding the potential compensation of a
regional manager fall within the category of future predictions. Again, they talk about
possibilities dependent upon the occurrence of certain conditions. Those conditions
include the sale of a particular “product mix,” the recruiting and retention of sales agents
who meet a certain weekly quota, the appointment of district managers who also
produce at a particular weekly quota, and the individual sales of the regional manager. 
Nowhere do the utterances allude to promises of what one will make irrespective of the
circumstances. And, while evidence exists of a Farm representative being unable to
recall anyone ever satisfying the conditions, he did not say that the compensation
package could never be received or that the conditions could never be satisfied. Nor
did he even say that no one has ever reached that goal; instead, he simply opined that
he personally knew of no one reaching it.
     In short, the document is nothing more than what it purports to be, i.e. a description
of a “$575,000 per year opportunity” if “done properly.” Being futuristic in nature and
dependent upon conditions which may or may not occur, we cannot say that it
constituted a misrepresentation of presently existing material fact, and the trial court did
not err in concluding that Farm was entitled to summary judgment on the claim.
                                                  Issue 3 - Directed Verdict
     Finally, the Frys complain of the trial court’s decision to deny, via a directed verdict,
the only claim they had left. It too involved an allegation of fraud, and Farm sought the
directed verdict because it believed that the Frys had no evidence pertinent to the
damages element of their cause of action. The Frys argued that they did and that it
consisted of the information imparted in Exhibit 13 mentioned above. That is, Exhibit 13
evinced the income they lost due to the alleged fraud in question. Thus, the trial court
acted improperly in directing a verdict, according to the Frys. We overrule the issue.



     To be recoverable, damages may not be too remote, too uncertain, or purely
conjectural. Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 816 (Tex.
1997). Furthermore, when seeking lost income or profits, the loss must be established
with reasonable certainty and through competent evidence. Southwest Battery Corp. v.
Owen, 131 Tex. 423, 115 S.W.2d 1097, 1098 (1938); Capitol Metro. Transp.
Authority/Central of Tenn. Ry & Navigation Co. v. Central of Tenn. Ry. & Navigation
Co., 114 S.W.3d 573, 579 (Tex. App.–Austin 2003, pet. denied). Indeed, the
presentation of objective facts, figures, or data from which the amount of loss can be
ascertained is necessary. Capitol Metro. Transp. Authority/Central of Tenn. Ry &
Navigation Co. v. Central of Tenn. Ry. & Navigation Co., 114 S.W.3d at 579. Finally,
profits dependent upon uncertain or changing market conditions or changing business
opportunities are speculative and, therefore, unrecoverable. Texas Instruments, Inc. v.
Teletron Energy Management, 877 S.W.2d 276, 279 (Tex. 1994). And, that is the
defect inherent in Exhibit 13.
     Exhibit No. 13 was developed as a marketing device to induce individuals to become
regional or district managers. And, while it spoke of income opportunities available if
one were to accept such positions, the potential opportunities depended upon the
satisfaction of various conditions. In other words, the exhibit’s content represented a
hypothetical situation that could be achieved if a certain number of agents and
managers were obtained in a particular group and they, coupled with the efforts of the
regional manager, sold a certain quantum of product. Though it may be possible to
achieve that level of income based on the presence of those conditions, we are cited to
no evidence illustrating that those conditions either arose or were satisfied here. 
Without that evidence, the prognostications appearing in Exhibit 13 are simply
conjecture. In other words, Exhibit No. 13 lacked probative value in absence of
evidence illustrating that Janice Fry would have induced a sufficient number of district
managers and agents to work within her group and sell the requisite amount of product
to assure her the income mentioned. Simply put, it is sheer speculation to say that
simply because Janice was a regional manager she would have attained the income
level described in the exhibit without evidence also illustrating that she had in place the
foundation necessary to secure that income. See Metropolitan Life Ins. Co. v. Haney,
987 S.W.2d 236, 247 (Tex. App.–Houston [14th Dist.] 1999, pet. denied) (finding that
there was no evidence to support damages for fraud when the contentions that the
plaintiff would have completed a sale were based on nothing more than mere conjecture
and the plaintiff failed to establish, based on any objective facts or figures, that he would
have earned $250,000 in commissions from working with other agents). Because of
this and the absence of any other evidence evincing damages, the trial court did not err
in directing a verdict in favor of Farm. See Prudential Ins. Co. of Am. v. Financial
Review Services, Inc., 29 S.W.3d 74, 77 (Tex. 2000) (holding that a trial court may
render a directed verdict if no evidence of probative force raises a fact issue on the
material questions involved).
     Accordingly, we reverse that part of the judgment denying Janice Fry recovery upon
her claim that Farm breached its agreement to reimburse her for the cell phone
expenses she incurred per the directives of Farm; that issue is remanded for further
proceedings. In all other things, the judgment is affirmed. 

 
Brian Quinn
                                                                          Chief Justice 



>
Do Not Publish.









 
1. In his brief, Appellant addresses the inapplicability of Texas Code of Criminal Procedure art. 38.37,
which applies to proceedings in the prosecution of a defendant for an offense such as the one at bar, if
committed against a child under the age of 17. Given that the indicted offense occurred when Amy was 19,
the State was unable to use art. 38.37 to introduce the evidence of appellant's other "crimes, wrongs or acts"
committed against her prior to her seventeenth birthday.
2. Appellant does not argue that he was duped, deceived, or tricked into confessing but that his
admissions resulted from a promise sufficient to overcome his will to be truthful. Thus, we do not address
whether trickery or the like occurred.
3. As will be discussed further when we address the ensuing point of error, the officers said that the
tape recorder stopped and that is why the context to the conversation was missing.