

# NUMBER 13-12-00703-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JORGE GUEVARA, M.D.,                                        Appellant,

v.

MARK LACKNER AND ROBERT E. LACKNER,                        Appellees.

### On appeal from the 138th District Court
### of Cameron County, Texas.

# OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Longoria**
**Opinion by Justice Rodriguez**

Appellant Jorge Guevara M.D. appeals the trial court's no-evidence summary judgment granted in favor of appellees Mark Lackner and Robert E. Lackner on Dr. Guevara's claims of fraud, breach of fiduciary duty, and conspiracy. By three issues, Dr. Guevara contends that the trial court erred in concluding that his evidence presented in

response to the Lackners' motion for no-evidence summary judgment was insufficient to raise a fact issue on the elements of his claims. We reverse and remand, in part, and affirm, in part.

## I. BACKGROUND

The relevant events involve the following members of L&L Importers, L.L.C.: Robert E. Lackner, Mark Lackner, Dr. Guevara, and Efren Rios.[1] Mark and Robert managed L&L Importers. Dr. Guevara became a member of L&L Importers in January 2008. Dr. Guevara contends that, at that time, he loaned the company approximately $154,000.[2] Approximately two months later, Rios became a member of L&L Importers. According to Dr. Guevara, in July 2008, he made additional funds available to L&L Importers.[3] Dr. Guevara claims that he did not receive his expected payment for any merchandise sold or for repayment of his loan. Subsequently, Dr. Guevara sued the Lackners for fraud, breach of fiduciary duty, and conspiracy.

The Lackners filed a no-evidence motion for summary judgment. In response, Dr. Guevara argued that he presented "more than a scintilla of evidence raising genuine

---

[1] Dr. Guevara sued L&L Importers, L.L.C., Robert E. Lackner, Mark Lackner, and Efren Rios. He also sued Robert H. Lackner, Mark and Robert E.'s father. However, Dr. Guevara non-suited his claims against L&L Importers and dismissed his claims against Robert H. Lackner and Rios, with prejudice, so they are not parties to this appeal.

[2] According to Dr. Guevara, this money was to be used to purchase products from China for export to Mexico and sale at Soriana and City Club (Soriana)—the equivalent of Wal-Mart and Sam's Club in the United States. The parties refer to this product as the Pem-America merchandise. The Lackners assert that Dr. Guevara contributed the money to L&L Importers in exchange for an ownership interest in the company.

[3] Dr. Guevara asserts that these funds were to be used to purchase a product referred to as the "Helen of Troy" merchandise for export into Mexico. Dr. Guevara also claims that he made money available to L&L Importers for operating expenses.

issues of material fact related to his claims against [the Lackners]; therefore their no-evidence motion for summary judgment must be denied." Dr. Guevara attached the following 355 pages of summary judgment evidence to his response: (1) excerpts from the deposition transcripts of Dr. Guevara, Robert, and Mark; (2) L&L Importers' articles of organization and company agreement (cited generally except for one reference to section 6.01, Management by Managers); (3) Elmer Shull's affidavit, with attachments; (4) various email exchanges between Shull, Dr. Guevara, Robert, and/or Mark; (5) an email exchange between Mark and Jeff Roth; (6) a promissory note (in Spanish and cited generally); (7) an irrevocable proxy from Rios to Robert, dated July 2, 2009; and (8) Mark's responses to Dr. Guevara's interrogatories (cited generally). The Lackners replied, objecting that Dr. Guevara's response was "filled with conclusory statements" and "allegations" and again arguing that Dr. Guevara's response failed to produce more than a scintilla of evidence as to each element of each claim made against them. The trial court granted summary judgment in favor of the Lackners and against Dr. Guevara on all claims. This appeal followed.

## II. STANDARD OF REVIEW

We review summary judgments de novo. *Valence Op. Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Alejandro v. Bell*, 84 S.W.3d 383, 390 (Tex. App.—Corpus Christi 2002, no pet.). A no-evidence summary judgment is equivalent to a pretrial directed verdict, and we apply the same legal sufficiency standard on review. *Zapata v. Children's Clinic*, 997 S.W.2d 745, 747 (Tex. App.—Corpus Christi 1999, pet. denied).

We will affirm a no-evidence summary judgment if the record shows one of the

3

following: (1) there is no evidence on the challenged element; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove the challenged element; (3) the evidence offered to prove the challenged element is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of the challenged element. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

We must consider all the evidence in the light most favorable to the party against whom the trial court rendered summary judgment, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *see City of Keller*, 168 S.W.3d at 827. But "this [C]ourt 'is not free to search the entire record, including materials not cited to or relied on by the trial court. An appellant has a duty to show that the record supports its contention.'" *Arrendondo v. Rodriguez*, 198 S.W.3d 236, 239 (Tex. App.—San Antonio 2006, no pet.) (quoting *Blake v. Intco Invs. of Tex., Inc.,* 123 S.W.3d 521, 525 (Tex. App.—San Antonio 2003, no pet.)).

### III. APPLICABLE LAW

"A motion for summary judgment must itself expressly present the grounds upon which it is made, and must stand or fall on these grounds alone." *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *see also* TEX. R. CIV. P. 166a(c) ("The motion for summary judgment shall state the specific grounds therefor."). So the Lackners, as defendant-movants in this case, cannot obtain a summary judgment on causes of action not addressed in their motion for summary judgment. *See Stiles v. RTC*, 867 S.W.2d

4

24, 26 (Tex. 1993) (stating that appellate courts can affirm summary judgment based only on a ground expressly stated in the motion for summary judgment granted by the trial court); *Porter v. Sw. Christian College*, 428 S.W.3d 377, 384 (Tex. App.—Dallas 2014, no pet.). "Likewise, issues a non-movant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion and are not expressly presented by mere reference to summary judgment evidence." *McConnell*, 858 S.W.2d at 341. Rule 166a draws a distinction between grounds, those reasons that entitle the movant to summary judgment, and issues, those reasons, which the non-movant contends defeat summary judgment. TEX. R. CIV. P. 166(a); *see McConnell*, 858 S.W.2d at 339 n.2; *Davis v. First Indem. of Am. Ins.*, 56 S.W.3d 106, 110 n.2 (Tex. App.—Amarillo 2001, no pet.).

A no-evidence motion must specifically state the elements for which there is no evidence. TEX. R. CIV. P. 166a(i); *Timpte Indus.*, 286 S.W.3d at 310. The burden then shifts to the non-movant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). A trial court should grant a no-evidence motion for summary judgment unless the non-movant produces more than a scintilla of summary judgment evidence to raise a genuine issue of material fact on the challenged elements. TEX. R. CIV. P. 166a(i); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam); *City of Keller*, 168 S.W.3d at 810. A non-movant produces more than a scintilla of evidence when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d

5

598, 601 (Tex. 2004); *see City of Keller*, 168 S.W.3d at 827; *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). A non-movant produces no more than a scintilla when the evidence is so weak that it does no more than create a mere surmise or suspicion of a fact. *Forbes*, 124 S.W.3d at 172.

"To defeat a motion made under paragraph (i), the respondent is not required to marshal [his] proof; [his] response need only point out evidence that raises a fact issue on the challenged elements." TEX. R. CIV. P. 166a(i), cmt. This means that the non-movant must specifically identify the supporting proof he seeks to have considered by the trial court. *See Arrendondo*, 198 S.W.3d at 238. And attaching entire documents and depositions to a response to a motion for summary judgment and referencing them only generally does not relieve the party of the need to point out to the trial court where in the documents the issues set forth in the response are raised. *Id.* at 238–39; *Gonzales v. Shing Wai Brass & Metal Wares Factory, Ltd.*, 190 S.W.3d 742, 746 (Tex. App.—San Antonio 2005, no pet.) (explaining that requirement for specificity is not satisfied when an entire document is attached to a response and the response refers to it only generally); *Upchurch v. Albear*, 5 S.W.3d 274, 284–85 (Tex. App.—Amarillo 1999, pet. denied) (same).

## IV. DISCUSSION

By three issues, Dr. Guevara argues that the trial court erred in granting the Lackners' no-evidence motion for summary judgment because he presented more than a scintilla of evidence on each element of each claim. The Lackners contend, in response, that Dr. Guevara's evidence did not meet the necessary burden of proof.

6

## A. Challenges to the Form of Dr. Guevara's Response

As a preliminary matter, we address the Lackners' assertion that Dr. Guevara filed a "fatally defective" response to their no-evidence summary judgment motion because "the response only made global references to the voluminous summary judgment evidence and the summary judgment evidence was not directed to a specific appellee [or] associated with a specific element of a particular cause of action." They also argue that because the response was defective, "the evidence relied on by Dr. Guevara [was] properly excluded by the trial court."

### 1. Global References to Voluminous Summary Judgment Evidence

Dr. Guevara filed 355 pages of exhibits in support of his response to the Lackners' no-evidence motion for summary judgment. Dr. Guevara cited only generally to some exhibits, and we will not review those exhibits. *See Arrendondo*, 198 S.W.3d at 238–39. However, in his response, Dr. Guevara provided a factual statement that contained record citations to some summary judgment evidence. Those citations, including his citations to Shull's two-page affidavit and to the seven pages of emails, were arguably specific as to the appellee and to an element of a particular cause of action. But we are not free to search the entire record, including those materials not cited to the trial court. *See id.* at 239 (citing *Blake,* 123 S.W.3d at 525). So our review will include only the evidence Dr. Guevara specifically cited in support of the issues he raised in his summary judgment response. *See id.*

### 2. Exclusion of Evidence by the Trial Court

The Lackners argue in support of this contention that the trial court excluded Dr.

7

Guevara's evidence because: (1) Dr. Guevara failed to comply with the evidentiary rules regarding use of unfiled discovery, affidavits, and attachments to affidavits; (2) Dr. Guevara's deposition testimony does not meet the standard for summary judgment proof; and (3) the articles of organization, the company agreement, and the irrevocable proxy were not in admissible form. However, the Lackners filed no objections to the form of Dr. Guevara's summary judgment evidence, and they did not move to strike the evidence. Moreover, we find no order in the record excluding any summary judgment evidence. We are not persuaded by this argument.

Having so determined, we now address the merits of this appeal, considering only the evidence that was properly "pointed out" to the trial court. *See id.* at 238–39.

## B. Fraud Claim

By his first issue, Dr. Guevara contends that the trial court erred in granting summary judgment against him on his fraud claim because he presented more than a scintilla of evidence in support of each element of that claim. Dr. Guevara's petition alleged two sub-categories of fraud against the Lackners, affirmative misrepresentations of material fact and omissions or failures to disclose material information. Specific to this issue, Dr. Guevara pleaded that the Lackners "made misrepresentations of material fact and failed to disclose material information to [him] . . . ."

### 1. Affirmative Misrepresentations

To recover on an action for fraud based on affirmative misrepresentations, a subcategory of fraud, the plaintiff must prove: (1) the defendant made a material representation; (2) the representation was false; (3) when made, the defendant knew the

8

representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (4) the defendant made the representation with the intent to induce the plaintiff to act upon it; (5) the plaintiff actually and justifiably relied upon the representation; and (6) the plaintiff thereby suffered injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011); *Ernst & Young, LLP. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

In their no-evidence motion for summary judgment, the Lackners asserted that Dr. Guevara "offered no evidence of any of the elements of fraud, including . . . [no] evidence that [they] made a material representation that was false." Dr. Guevara filed his response, arguing that "the Lackners made several material representations to Dr. Guevara in their attempts to garner a loan on behalf of L&L." More specifically, Dr. Guevara claimed that the following material representations "turned out to be largely exaggerated or blatant untruths": (1) Robert had ten years' experience in the import/export business; (2) S&L International Closeouts (S&L), an import/export business Robert owned and operated had been very successful; and (3) if he loaned money to the Lackners, the product to be purchased and exported would bring approximately 15 percent in profit, payment would be received in sixty to ninety days, and he would be paid back in full for his loan at that time.

On appeal, Dr. Guevara again contends that his summary-judgment evidence provides more than a scintilla of evidence that the Lackners made the above representations and that they were false.[4] The evidence, which Dr. Guevara specifically

___

[4] On appeal, Dr. Guevara also alleges that the Lackners made other material representations to him that were false. First, he contends that in their subsequent efforts to obtain additional funds from him,

cited to the trial court to establish these elements of his fraud claim, includes excerpts from his deposition testimony, Robert's deposition testimony, and Mark's deposition testimony; Shull's affidavit; and a March 23, 2010 email from Shull to Dr. Guevara.

### a. Robert's Experience and the Success of S&L

Regarding Robert's experience in the import/export business and the success of S&L, Dr. Guevara cited to the following testimony from his deposition:

> [Robert] told me that he had experience and he had a company called S&L Export/Import, you know, with many years, and that he was splitting with his partner—I don't know if it was his partner or ex-partner at that time—and he was interested for me to be an investor, basically, as you know—in a company, L&L, and I would be basically the financier basically.  That was it. . . .  He actually brought me the business, you know, book from S&L Import/Export and showed me the papers.   And he gave it to me. . . .   His— the financial statement of the company S&L Export/Import.

And when asked to explain his pleading allegation that "[t]he Lackners and their partner in [S&L] had previously parted ways based on the Lackners' questionable business

---

the Lackners represented the following:    (1) the Pem-America merchandise had been received in Laredo, shipped to Mexico, and Rios would soon be receiving payment from Soriana; (2) at the time of the Helen of Troy transaction, everything was going as planned and they would be receiving payment for the Pem-America merchandise; and (3) Rios had been paid in cash for the merchandise, but was unable to pay L&L Importers.   Second, Dr. Guevara contends that, in regard to their attempts to recover funds from Rios, the Lackners made the following representations:   (1) the Quintero Law Firm advised them not to sue Rios individually; (2) then told him they did not sue Rios personally because he was insolvent; and (3) eventually informed him they made no independent determination of Rios's financial condition and saw no documentary evidence establishing Rios's insolvency.   Dr. Guevara further claims that in order to convince him to agree to a settlement with Grupo, Rios's business, the Lackners represented that Rios and Grupo would provide four post-dated checks to Mexican counsel for L&L Importers and that Robert would pick up those checks from L&L Importers' counsel in Mexico.   Finally, Dr. Guevara claims that the Lackners explained that if he provided additional funds, they would pay certain operational expenses of L&L Importers, including rental expenses for a warehouse leased by L&L Importers from the University of Texas at Brownsville.

However, Dr. Guevara's response expressly identified only the three representations discussed in the text of this opinion.   His response did not expressly present these additional representations to the trial court, and we shall not consider them as grounds for reversal of the trial court's summary judgment on this claim.   *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *see also* TEX. R. CIV. P. 166a(c); *see also Riojas v. Elsa State Bank*, No. 13-96-119-CV, 1997 WL 33760908, at *1–2 (Tex. App.—Corpus Christi Aug. 7, 1997, no writ) (op., not designated for publication).

practices," Dr. Guevara responded,

> Well, initially when they approached me, they told me that they split because apparently his ex-partner talked bad about them. That's what they told me.

> But when I basically talked to his partner, basically they—basically, they put money—they put little money, they don't pay back, basically, and they have basically jumped the price from one—basically from one price to another price; I mean, very unethical things, you know.

Dr. Guevara also cites to the following answers given by Robert in response to deposition questions asked by Dr. Guevara's counsel:

Q. This is the [balance sheet for S&L] that you gave Dr. Guevara before he made the decision to invest in the company, correct?

A. I don't recall giving him this document.

Q. Okay. Do you know if your brother gave Dr. Guevara this document?

A. I don't know.

. . . .

Q. Dr. Guevara testified that this document or this set of documents was provided to him before he invested in L&L.

Do you have any reason to disagree with that statement?

A. If I don't recall giving this to him, yes, I do.

Dr. Guevara also relies on Shull's affidavit and Shull's email to Dr. Guevara. In the affidavit, Shull set out that he was a partner with Robert in a business named S&L and that he ended that partnership "because [Robert] did not have any money to contribute towards [sic] the company and its purchase of products for shipment into Mexico." Shull also avowed that he provided Robert with S&L's financial statements to

11

show to a potential S&L investor. Shull explained that he later learned that either Robert or Mark provided the statements to Dr. Guevara. According to his affidavit, Shull did not "authorize or agree that these [statements] could be used by the Lackners to solicit an investment in L&L Importers, LLC." The email from Shull to Dr. Guevara set out the same information about ending the partnership and about providing S&L's financial statements to Robert.

In sum, the evidence merely established that Robert told Dr. Guevara he had experience in the import/export business, that his ownership in S&L, an import/export business, had ended, and that he was interested in Dr. Guevara becoming an investor in L&L Importers, another import/export business. There is no more than a scintilla of evidence that Robert represented to Dr. Guevara that he had worked for ten years in the import/export business or that, if he did make that representation, it was false.

As to the success of S&L, the evidence showed that Robert provided S&L's balance sheet or financial statements to Dr. Guevara without Shull's authority, Shull ended his partnership with Robert in S&L "because [Robert] did not have any money to contribute towards the company and its purchase of products for shipment into Mexico," pursuant to their agreement to equally fund all purchases, and because Robert never repaid Shull for money he had loaned to him, Shull "was forced to sue Mr. Lackner to recover these funds." But this evidence is not more than a scintilla that Robert represented to Dr. Guevara that S&L was successful or that such a statement, if made, was false. And while there is evidence of Robert's alleged personal failure to cover 50 percent of S&L's purchases and to pay money owed to Shull, it demonstrates a dispute

12

between partners over alleged debts; it does not provide more than a scintilla of evidence that S&L was unsuccessful, as Dr. Guevara suggests through this argument.

Considering this evidence in the light most favorable to Dr. Guevara, *see Timpte Indus.*, 286 S.W.3d at 310; *City of Keller*, 168 S.W.3d at 827, *see also Arrendondo*, 198 S.W.3d at 239, we conclude that Dr. Guevara presented no more than a scintilla of evidence to prove that the Lackners represented that Robert had ten years' experience in the import/export business or that S&L was successful. *See* TEX. R. CIV. P. 166a(i); *Hamilton*, 249 S.W.3d at 426; *City of Keller*, 168 S.W.3d at 810. And even had the Lackners made these representations, we further conclude that the evidence is no more than a scintilla to prove that they were false. *See* TEX. R. CIV. P. 166a(i); *Hamilton*, 249 S.W.3d at 426; *City of Keller*, 168 S.W.3d at 810; *see also Italian Cowboy Partners*, 341 S.W.3d at 337; *Ernst & Young*, 51 S.W.3d 573 at 577. This evidence does not rise "to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ridgway*, 135 S.W.3d at 601; *see also City of Keller*, 168 S.W.3d at 827; *Forbes*, 124 S.W.3d at 172. Instead, we conclude that the evidence creates no more than a mere surmise or suspicion of a fact. *See Forbes*, 124 S.W.3d at 172.

### b. Repayment of Loan and Profit

Dr. Guevara also complains of the following representation allegedly made by the Lackners: if he loaned them money, the product to be purchased and exported would bring approximately 15 percent in profit, payment would be received in sixty to ninety days, and he would be paid back in full for his loan at that time. Dr. Guevara cited to excerpts from his deposition and from the depositions of Robert and of Mark as evidence

of the allegedly false representations concerning the timing of the repayment of his loan and the profit he would receive.

At his deposition, Dr. Guevara testified that,

> they basically gave me a misrepresentation about, you know, the profits and we're going to get the money back in 50 to 90 days. . . . And after basically we mentioned—well, that it was profitable; we got the money, you know, in 60 to 90 days with the first purchase with Soriana/City Club [Soriana]. And then we'll get the money back in 60 to 90 days with 15 percent return the first purchase, and then the following purchase is going to be, I believe, 60 days—I mean, 60 days they're going to pay us and it will be 20 to 30 percent profit, you know.

When asked if Robert gave him any details about the purchase, Dr. Guevara answered, "Basically they were interested in buying, you know, some bedspreads, you know, from China, from Pem-America, and also—and the initial investment would be less than a hundred thousand dollars and we get the money back in 60 to 90 days." Dr. Guevara then explained, "Well, we'll give them a loan, and then I will pay back my loan, and then—and then the profits are going to split, basically. It's going to be basically 40 percent for me; it's going to be 20-20; and at that time basically they were considering Efren Rios, it would be maybe 20 for his contract . . . ."

Robert testified at his deposition that after Dr. Guevara invested his money and they bought the Pem-America product, it was shipped from China to Long Beach California, and then to a custom broker in Laredo. Robert also agreed that he told Dr. Guevara that "you guys would get paid within 60 to 90 days." While disagreeing that he informed Dr. Guevara that they would make a 20 percent profit, Robert testified that he thought he told Dr. Guevara that the profit margin would be between 12 and 15 percent. Robert also testified that, before Dr. Guevara invested money in the company, he told Dr.

14

Guevara that payment was going to be made within 60 to 90 days "[b]ecause those are the payment terms of [Soriana]."

Dr. Guevara also cited the following testimony provided by Mark at his deposition:

Q.   Your brother testified yesterday that he told Dr. Guevara that payment would be made within 60 to 90 days on the Pem-America products.  Do you remember that?

A.   That sounds familiar, yes.

Q.   Okay.  And that representation was made before Dr. Guevara invested any money, correct?

A.   I don't recall.  I don't recall on that.

. . . .

Q.   Was there a discussion before Dr. Guevara invested regarding what percentage of profit would be made on the merchandise?

A.   I don't remember.  I don't remember.

Predictions and opinions regarding the future profitability of a business generally cannot form a basis for a claim of fraud.  *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983); *Maness v. Reese*, 489 S.W.2d 660, 663 (Tex. Civ. App.—Beaumont 1972, writ ref'd n.r.e.); *see Nat'l Newspaper Enters, Inc. v. Chitwood*, 68 S.W.2d 264, 267 (Tex. Civ. App.—Dallas 1934, writ dism'd) (stating that a statement of belief as to the future earnings of a business based more or less on guesswork cannot be the basis of fraud); *see also Zar v. Omni Indus., Inc.*, 813 F.2d 689, 693 (5th Cir. 1987) (holding that in Texas, future predictions and opinions, especially those regarding the future profitability of a business, cannot, as a matter of law, form a basis for fraud); *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995) (recognizing that "an expression of opinion about monetary

15

value is not a representation of fact which gives rise to an action for fraud"). This is so because fraud generally involves the "representation of a material fact." *Trenholm*, 646 S.W.2d at 930. The following, however, are exceptions to this general rule: (1) knowledge of the representation's falsity; and (2) an opinion that is based on facts known to be false. *See id.*

Here, the testimony regarding the timing of the repayment of Dr. Guevara's money and the making of a profit fall within the category of future predictions. Robert testified that Dr. Guevara's payment depended upon the occurrence of certain conditions. Those conditions included payment by Soriana, which should have occurred within sixty to ninety days "[b]ecause those are the payment terms of [Soriana]." Nowhere, based on the cited testimony, did the Lackners allude to promises of what one would do irrespective of the circumstances. The Lackners testified to what they expected to occur. Being futuristic in nature and dependent upon conditions, which may or may not occur, we cannot say that the cited testimony constituted more than a scintilla of evidence of misrepresentations of presently existing material facts. *See id.* And we cannot say that the cited testimony constituted more than a scintilla of evidence that the Lackners had knowledge of any representation's alleged falsity or that the Lackners expressed an opinion based on facts they knew were false. *See id.*

So we conclude that this evidence, which provides predictions and opinions regarding the future profitability of L&L Importers, is no more than a scintilla that the Lackners misrepresented to Dr. Guevara that if he loaned them money, the product to be purchased and exported would bring approximately 15 percent in profit, payment would

16

be received in sixty to ninety days, and he would be paid back in full for his loan at that time. *See* TEX. R. CIV. P. 166a(i); *Hamilton*, 249 S.W.3d at 426; *City of Keller*, 168 S.W.3d at 810. This evidence does not rise "to a level that would enable reasonable and fair-minded people to differ in their conclusions." *See Ridgway*, 135 S.W.3d at 601; *see City of Keller*, 168 S.W.3d at 827; *Forbes*, 124 S.W.3d at 172. The evidence creates no more than a mere surmise or suspicion of a fact. *See Forbes*, 124 S.W.3d at 172.

In sum, the trial court did not err in concluding that the Lackners were entitled to summary judgment on Dr. Guevara's fraud claims that were based on allegations of affirmative misrepresentations.

### 2. Omission or Failure to Disclose

Fraud by omission or non-disclosure is another subcategory of fraud because an omission or non-disclosure may be as misleading as a positive misrepresentation of fact where a party has a duty to disclose. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997); *Manon v. Solis*, 142 S.W.3d 380, 387 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *see Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998); *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos., Inc.,* 217 S.W.3d 653, 670 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). For example, a seller of real estate is under a duty to disclose material facts that would not be discoverable by the exercise of ordinary care and diligence on the part of the purchaser or that would not be uncovered by a reasonable investigation and inquiry. *Myre v. Meletio,* 307 S.W.3d 839, 843 (Tex. App.—Dallas 2010, pet. denied) (citing *Smith v. Nat'l Resort Cmtys., Inc.*, 585 S.W.2d 655, 658 (Tex. 1979)). A duty to disclose may also arise in the following

17

situations: (1) when there is a confidential or fiduciary relationship; (2) when one voluntarily discloses information, the whole truth must be disclosed; (3) when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; and (4) when one makes a partial disclosure and conveys a false impression. *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 384 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (op. on reh'g); *Ralston Purina Co. v. McKendrick*, 850 S.W.2d 629, 635 (Tex. App.—San Antonio 1993, writ denied).

In this case, the Lackners' motion for no-evidence summary judgment did not attack any claims of fraud by omission or non-disclosure that Dr. Guevara raised. In their motion, the Lackners specifically challenged Dr. Guevara's fraud claim on the sole ground that there was no evidence of any affirmative misrepresentations. They did not claim there was no evidence of an omission or non-disclosure that they had a duty to disclose to Dr. Guevara. *See* TEX. R. CIV. P. 166a(i); *Timpte Indus.*, 286 S.W.3d at 310; *see also* TEX. R. CIV. P. 166a(c); *Schlumberger*, 959 S.W.2d at 181; *Sci. Spectrum, Inc.*, 941 S.W.2d at 912; *McConnell*, 858 S.W.2d at 341. Because the Lackners' no-evidence motion for summary judgment failed to address fraud by omission or non-disclosure, we conclude that the trial court erred in granting summary judgment in favor of the Lackners on any of Dr. Guevara's omission or non-disclosure fraud claims. *See Stiles*, 867 S.W.2d at 26; *Porter*, 428 S.W.3d at 384.

### 3. Summary

We overrule Dr. Guevara's first issue to the extent it challenges the trial court's

summary judgment on Dr. Guevara's fraud claims based on affirmative representations that were false. And having concluded that Dr. Guevara produced no evidence of the first two elements of these claims, we need not address the remaining elements. *See* TEX. R. APP. P. 47.1.

We sustain this first issue on any of Dr. Guevara's fraud claims based on omission or non-disclosure because we cannot affirm this summary judgment on a ground not raised in the Lackners' no-evidence motion for summary judgment. *See Stiles*, 867 S.W.2d at 26; *Porter*, 428 S.W.3d at 384.

## C. Breach-of-Fiduciary-Duty Claim

By his second issue, Dr. Guevara contends that he presented more than a scintilla of evidence in support of the elements of his breach-of-fiduciary-duty claim against each Lackner, individually, and that the summary judgment on this cause of action was, therefore, inappropriate. Dr. Guevara contends that the Lackners, who were the managers of L&L Importers and who had sole control over the company, owed him a fiduciary duty. In his response to the Lackners' motion for summary judgment and now on appeal, Dr. Guevara contends that the evidence shows that as a member he "had no rights to be involved in the day-to-day operations of the company." He argues that "[b]ased on the terms of the L&L Company Agreement, and the Lackners' refusal to allow Dr. Guevara to participate in any way in the management of L&L, . . . the Lackners owe[d] fiduciary duties to Dr. Guevara." Dr. Guevara also asserts that he produced evidence to raise a genuine issue of material fact that the Lackners breached these duties and that their breach injured him.

19

### 1. Relevant Summary Judgment Contentions

The Lackners asserted in their no-evidence motion for summary judgment that Dr. Guevara offered no evidence that a fiduciary relationship existed between them and Dr. Guevara, an individual shareholder. The Lackners also claimed that there was no evidence that they breached any duty or that any breach injured Dr. Guevara or benefited the Lackners.

In response, relying on section 6.01 of L&L Importers' company agreement, Dr. Guevara argued that fiduciary "duties of loyalty and utmost good faith, fair and honest dealing, full disclosure, and to account for profits and property" existed because the Lackners possessed all control over L&L Importers and its operations. *See Bohatch*, 977 S.W.2d at 545; *Schlumberger*, 959 S.W.2d at 175; *Brousseau*, 81 S.W.3d at 394–95. Dr. Guevara urged the following in support of his claim that the Lackners breached their duties:

> The Lackners clearly acted in bad faith and without loyalty to Dr. Guevara when they took the money received as a loan from Dr. Guevara . . . , used it to purchase the Pem-America merchandise, and then conspired with Mr. Rios to purportedly keep the profits from L&L [Importers] and ultimately Dr. Guevara. Further, the Lackners' continued suppression of information related to the purchase, transfer, and ultimate "loss" of payment breaches their fiduciary duties of full disclosure and to account for profits and property. The Lackners' clear breach of their fiduciary duty to Dr. Guevara is highlighted even further by their absolute failure to use any business judgment in making the decision: (1) not to sue Rios personally in Mexico based on a now convenient claim of insolvency; (2) to accept a Promissory Note in light on an insolvency claim without any investigation into the financial condition of Grupo; (3) to accept a worthless piece of property as collateral; and (4) to try and absolve Mr. Rios of any personal liability through a secret proxy that would permit Robert to approve a settlement on Mr. Rios'[s] behalf.

Dr. Guevara also asserted that he was injured because of the breach when he lost (1) his

$154,000 used to purchase the Pem-America merchandise; (2) his funds used for rent; (3) his funds used to purchase the Helen of Troy products; and (4) his funds expended on legal and related expenses.

## 2. Applicable Law

The elements of a breach-of-fiduciary-duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) a breach of the duty by the defendant; and (3) injury to the plaintiff or benefit to the defendant because of the defendant's breach. *See Burrow v. Arce*, 997 S.W.2d 229, 237 (Tex. 1999); *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied).

## 3. Supporting Evidence

In support of his argument that the Lackners owed him a fiduciary duty, Dr. Guevara relied on section 6.01 of the L&L Importers company agreement. Section 6.01 provides in relevant part:

> [T]he Managers shall have the sole and exclusive control of the management, business and affairs of the Company, and the Managers shall make all decisions and take all actions for the Company not otherwise provided for in this Agreement . . . .[5]

---

[5] Section 6.01 further set out that the Lackners, as managers,

[made] all decisions and [took] all actions for the Company . . . including, without limitation, the following:

(a) entering into, making, and performing contracts, agreements, and other undertakings binding the Company that may be necessary, appropriate, or advisable in furtherance of the purposes of the Company and making all decisions and waivers thereunder, including a Fundamental Business Transaction;

(b) opening and maintaining bank and investment accounts and arrangements, drawing checks and other orders for the payment of money, and designating individuals with authority to sign or give instructions with respect to those accounts and arrangements;

Dr. Guevara also relied on referenced excerpts from his own deposition, excerpts from the deposition testimony of the Lackners, and Shull's affidavit to support his breach-of-fiduciary-duty argument. This evidence involved L&L Importers' business transactions with Rios—transactions managed solely by the Lackners, some of which Dr. Guevara claims were not conducted in an appropriate manner. He also relied on cited testimony about Lackners' decisions regarding what legal action was to be taken, decisions which Dr. Guevara claimed were inappropriate.

### 4. Discussion

Dr. Guevara's status as a co-shareholder or co-member in a closely held corporation alone does not automatically create a fiduciary relationship between co-

---

(c)   maintaining the assets of the Company in good order;

(d)   collecting sums due the Company;

(e)   to the extent that funds of the Company are available therefor, paying debts and obligations of the Company;

(f)   acquiring, utilizing for company purposes, and disposing of any asset of the Company;

(g)   borrowing money or otherwise committing the credit of the Company for Company activities and voluntary prepayments or extensions of debt;

(h)   selecting, removing, and changing the authority and responsibility of lawyers, accountants, and other advisers and consultants;

(i)   obtaining insurance for the Company;

(j)   determining distributions of Company cash and other property as provided in paragraph 5.02 of this Agreement;

(k)   establishing a seal for the Company; and

(l)   designating one or more committees, each of which shall be comprised of one or more Managers, to exercise any authority of the Managers in the management, business and affairs of the Company.

22

shareholders or co-members. *See Kaspar v. Throne*, 755 S.W.2d 151, 155 (Tex. App.—Dallas 1988, no writ); *see also Pabich v. Kellar*, 71 S.W.3d 500, 504 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g); *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). And Texas courts have declined to recognize a broad formal fiduciary relationship between majority and minority shareholders in closely held companies that would apply to every transaction. *See, e.g., Allen v. Devon Energy Holdings, L.L.C.,* 367 S.W.3d 355, 391 (Tex. App.—Houston [1st Dist.] 2012, judgm't set aside by arg.) (op. on reh'g). Texas courts have, however, recognized that an informal fiduciary duty may exist between the shareholders in a closely held corporation, depending on the circumstances. *See generally Willis v. Donnelley*, 199 S.W,3d 262, 277 (Tex. 2006); *Miller v. Miller*, 700 S.W.2d 941, 945–46 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (stating that shareholders' intimate knowledge of company's affairs supported finding a fiduciary relationship); *Tuck v. Miller*, 483 S.W.2d 898, 905 (Tex. Civ. App.—Austin 1972, writ ref'd n.r.e.) (op. on reh'g) (holding that superior business expertise, among other factors, supported a finding of a confidential relationship); *see also Allen,* 367 S.W.3d at 391 (recognizing a *formal* fiduciary duty between co-shareholders of an LLC in the context of a redemption where the majority ownership interest had dominant control over the operation and management of the business); *Vejara v. Levior Int'l LLC*, No. 04-11-00595-CV, 2012 WL 5354681, at *5 (Tex. App.—San Antonio Oct. 31, 2012, pet. denied) (mem. op.) (holding that "Vejara's control and intimate knowledge of the company's affairs and plans gave rise to the existence of an informal fiduciary duty to Levior").

Section 6.01 provides that the Lackners, as managers, had "the sole and exclusive control of the management, business and affairs of the Company." The agreement is evidence of the Lackners' control of L&L Importers' operations. Their position as managers also gave them intimate knowledge of L&L Importers' daily affairs and plans as reflected in the evidence before this Court. There is evidence that Dr. Guevara did not have such extensive knowledge of L&L Importers' operations; that he was not involved in the day-to-day operations of the company.

Dr. Guevara's referenced summary-judgment evidence also shows that the Lackners did not disclose to Dr. Guevara some information related to their business transactions involving L&L Importers and Rios's business, Grupo, and did not disclose information regarding subsequent legal remedies. There is also evidence that the Lackners provided information to Dr. Guevara only after they made decisions and took actions, which could suggest inappropriateness. And the evidence shows that the Lackners made decisions without knowledge of relevant facts. Finally, Dr. Guevara produced evidence that funds he provided to L&L Importers were "lost" allegedly because of the Lackners' breach of fiduciary duty.

Considering all the evidence in the light most favorable to Dr. Guevara in our de novo review and crediting evidence favorable to Dr. Guevara if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not, *see Timpte Indus.*, 286 S.W.3d at 310; *City of Keller*, 168 S.W.3d at 827; *see also Arrendondo*, 198 S.W.3d at 239, we conclude that Dr. Guevara presented more than a scintilla of evidence to prove that an informal fiduciary duty existed between him and the Lackners, that the

Lackners breached that duty, and that Dr. Guevara was injured because of the breach. *See* Tᴇx. R. Cɪv. P. 166a(i); *Hamilton*, 249 S.W.3d at 426; *City of Keller*, 168 S.W.3d at 810; *see also Burrow*, 997 S.W.2d at 237. The evidence created more than a mere surmise or suspicion of a fact. *See Ridgway*, 135 S.W.3d at 601; *see City of Keller*, 168 S.W.3d at 827; *Forbes*, 124 S.W.3d at 172.

Because Dr. Guevara presented more than a scintilla of probative evidence raising a genuine issue of material fact, we conclude that the trial court's no-evidence summary judgment was improper. We sustain Dr. Guevara's second issue.

## D.    Conspiracy Claims

In his third issue, Dr. Guevara alleges that he presented more than a scintilla of evidence to support his conspiracy claims. On appeal, Dr. Guevara alleges two conspiracy theories—that the Lackners conspired to commit breach of fiduciary duties owed to him and that the Lackners and Rios conspired to commit fraud against him. Civil conspiracy requires (1) two or more persons who agree upon an object, (2) a meeting of minds on the object to be accomplished, and (3) one or more overt, unlawful acts committed in furtherance of the conspiracy, (4) which results in damages. *See, e.g., Ernst & Young*, 51 S.W.3d at 583; *Weakley v. East*, 900 S.W.2d 755, 758–59 (Tex. App.—Corpus Christi 1995, writ denied).

### 1.    Conspiracy Based on Breach of Fiduciary Duties

In paragraph VIII of his second amended original writ of mandamus to compel inspection of books and records and original petition Dr. Guevara alleged only that the Lackners and Rios conspired to defraud him. He claimed that

25

[t]he [Lackners and Rios] effectuated their conspiracy by providing false information and failing to disclose information to Dr. Guevara both before and after his loan to L&L [Importers]. [The Lackners and Rios] engaged in one or more unlawful, overt acts and these acts proximately caused Dr. Guevara to suffer damages in excess of this Court's minimal jurisdictional limits.

Dr. Guevara did not allege that the Lackners conspired to commit breach of fiduciary duties owed to him. That separate and distinct conspiracy theory was absent from Dr. Guevara's live petition.

A pleading should "consist of a statement in plain and concise language of the plaintiff's cause of action or the defendant's grounds of defense." TEX. R. CIV. P. 45(b). "The purpose of pleadings is to give the adverse parties [fair] notice of each party's claims and defenses, as well as notice of the relief sought." *Woolam v. Tussing*, 54 S.W.3d 442, 447 (Tex. App.—Corpus Christi 2001, no pet.) (citing *Perez v. Briercroft Serv. Corp.*, 809 S.W.2d 216, 218 (Tex. 1991); *Gonzalez v. City of Harlingen*, 814 S.W.2d 109, 111–12 (Tex. App.—Corpus Christi 1991, writ denied)); *see* TEX. R. CIV. P. 47(a). A pleading provides sufficient fair notice of the claim involved when "an opposing attorney of reasonable competence could examine the pleadings and ascertain the nature and basic issues of the controversy and the relevant testimony." *Woolam*, 54 S.W.3d at 448 (citing *State Fid. Mortgage Co. v. Varner*, 740 S.W.2d 477, 478 (Tex. App.—Houston [1st Dist.] 1987, writ denied)). The general rule is that petitions will be construed liberally in favor of the pleader. *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 186 (Tex. 1977). Yet while a pleading must be construed as favorably as possible to the pleader, the inference that a cause of action has been pleaded must be reasonable in light of what is specifically stated in the pleading. *See Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993) (op. on

26

reh'g).

Dr. Guevara's petition did not specifically allege that the Lackners committed conspiracy by breach of fiduciary duties. And we cannot infer this cause of action from his pleading because such an inference is not reasonable in light of the wording specifically stated in his petition—Dr. Guevara pleaded that the Lackners and Rios conspired to defraud him by providing false information and failing to disclose information and that these acts caused Dr. Guevara to suffer damages. In other words, we conclude that a cause of action for conspiracy between the Lackners to commit breach of fiduciary duties against Dr. Guevara is not an inference that reasonably results from the statements contained in his petition. We find nothing in the petition that gave fair notice to the Lackners that Dr. Guevara was asserting a cause of action for conspiracy to commit breach of fiduciary duties. This is further supported by the Lackners' motion for summary judgment, which only challenged Dr. Guevara's claim for conspiracy to commit fraud and by the trial court's order, which specifically granted summary judgment on Dr. Guevara's conspiracy-to-commit-fraud claim described at paragraph VIII of his petition. So we conclude that this cause of action for conspiracy to breach fiduciary duties owed to Dr. Guevara was not before the trial court and is therefore not before this Court in this appeal.

## 2.    Conspiracy Based on Fraud by Affirmative Misrepresentations

Here, the alleged overt, unlawful act committed in furtherance of a conspiracy is fraud based on affirmative misrepresentations. *See Ernst & Young*, 51 S.W.3d at 583. However, in our discussion of the first issue, we concluded that Dr. Guevara did not produce more than a scintilla of evidence to support his claim for affirmative-

27

misrepresentation fraud.   So he has not established the third element of this conspiracy claim that is based on fraud by affirmative misrepresentation.   *See id.*; *see also* TEX. R. APP. P. 47.1.

### 3.      Conspiracy Based on Fraud by Omission or Non-disclosure

Finally, we review Dr. Guevara's conspiracy claim based on the alleged overt, unlawful act of fraud by omission or non-disclosure.   Because we concluded in the first issue that the Lackners' motion for no-evidence summary judgment did not attack any claims of fraud by omission or non-disclosure that Dr. Guevara raised, we now conclude the Lackners did not attack Dr. Guevara's allegation of conspiracy based on that theory of fraud.   *See* TEX. R. CIV. P. 166a(i); *Timpte Indus.*, 286 S.W.3d at 310; *see also* TEX. R. CIV. P. 166a(c); *Schlumberger*, 959 S.W.2d at 181; *Sci. Spectrum, Inc.*, 941 S.W.2d at 912; *McConnell*, 858 S.W.2d at 341.   The Lackners cannot obtain summary judgment on a theory of conspiracy not expressly addressed in their motion for summary judgment. *See Stiles*, 867 S.W.2d at 26.   So to the extent the trial court granted summary judgment in favor of the Lackners on Dr. Guevara's claim for conspiracy to commit fraud based on omission or non-disclosure, it did so in error.   *See id.*; *Porter*, 428 S.W.3d at 384.

### 4.      Summary

Having concluded that Dr. Guevara did not plead a claim for conspiracy based on breach of fiduciary duties and did not produce more than a scintilla of evidence on all elements of the conspiracy claim based on affirmative misrepresentations, we overrule those portions of his third issue.   We sustain the remaining portion of Dr. Guevara's third issue challenging the trial court's summary judgment on his conspiracy claim based on

fraud by omission or non-disclosure.

## V.  CONCLUSION

We reverse the trial court's summary judgment on Dr. Guevara's claims for breach of fiduciary duty, fraud by omission or non-disclosure, and conspiracy based on fraud by omission or non-disclosure and remand for further proceedings as to those claims.   We affirm the remainder of the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 13th
day of November, 2014.

29